**Carol E. LISKER, Plaintiff,**

**v.**

**Joseph J. KELLEY, Jr., Secretary of the Commonwealth of Pennsylvania, and C. Russell Welsh, Jr., Deputy Secretary of the Commonwealth of Pennsylvania, Defendants.**

**Civ. No. 70–134.**

United States District Court,
M. D. Pennsylvania.

Aug. 17, 1970.

———◆———

A. Harry Levitan, Harry Lore, Philadelphia, Pa., J. Thomas Menaker, Harrisburg, Pa., for plaintiff.

William C. Sennett, Atty. Gen., Edward Friedman, Counsel Gen., David W. Rutstein, Deputy Atty. Gen., Commonwealth of Pennsylvania, for defendants.

Before VAN DUSEN, Circuit Judge, and NEALON and HERMAN, District Judges.

OPINION OF THE COURT

HERMAN, District Judge:

On April 6, 1970 plaintiff filed her complaint in this court seeking a declaratory judgment and an injunction in which she attacks the constitutionality of the Pennsylvania Statute, Act of December 22, 1951, P.L. 1726 § 1 et seq., as amended by the Act of June 29, 1967, P.L. ——, No. 35 (65 P.S. § 212 et seq.), known as the Pennsylvania Loyalty Act.

Plaintiff specifically complains that on March 30, 1970 she filed with the defendants Joseph J. Kelley, Jr., Secretary of the Commonwealth of Pennsylvania, and C. Russell Welsh, Jr., Deputy Secretary of the Commonwealth, her Nomination Paper as a candidate of the Socialist Workers Party in the 1970 General Election for the Office of Representative in the General Assembly from the 187th State Representative District which was complete and proper and accompanied by the necessary filing fee, and that defendants refused to accept it for the sole reason that plaintiff had failed to sign the Candidate's Loyalty Oath as required by the aforementioned act of assembly (65 P.S. § 224).

After an answer was filed on behalf of the defendants; on notice of plaintiff, a three-judge district court was convened, and thereafter the parties stipulated all relevant facts. From the stipulation and supplemental stipulation we find that the plaintiff meets the qualifications for the office which she seeks; that her Nomination Paper was timely filed for the election to be held on November 3, 1970; that it contained the required number of signatures of electors; that the necessary filing fee accompanied her Nomination Paper; that she represents that if elected to the said Office she would take and subscribe to the following oath:

"I do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth and that I will discharge the duties of my office with fidelity."

It is further stipulated that plaintiff, on March 29, 1970, struck from her Nomination Paper the words, "And I further swear (or affirm) that I am not a subversive person as defined in the 'Pennsylvania Loyalty Act,' Act of December 22, 1951, (Pamphlet Laws 1726)."

It was also stipulated that the term "subversive person," as defined in the Pennsylvania Loyalty Act, was redefined by the amendment to said act, made by Act No. 35, approved June 29, 1967, (65 P.S. § 212) and that the reference to the Act of December 22, 1951 contained in the Nomination Paper includes all amendments made thereto.

Plaintiff contends that the action of the defendants in refusing to receive and file her Nomination Paper for the sole reason that she failed to sign the Candidate's Loyalty Oath as required by the act of assembly, infringes upon and invades her rights of freedom of speech, belief, and association, in violation of the First and Fourteenth Amendments [1] to the Constitution of the United States. She also contends that the said oath requirement, by summarily disqualifying her as a candidate for office, is in violation of the Fifteenth Amendment because it denies qualified electors their right to vote for her in the election of November 3, 1970.

Plaintiff's contention that the action of defendants violates certain sections of the Constitution of the Commonwealth of Pennsylvania should be submitted to the courts of this Commonwealth.

The Pennsylvania Loyalty Act, as amended, provides, in pertinent part:

"No person shall become a candidate for election under the provisions of the * * * 'Pennsylvania Election Code', and its amendments, to any State, district, county, or local public office whatsoever in this Commonwealth, unless he shall file with his nomination petition, nomination paper or nomination certificate a statement, under oath or affirmation, that he is not *a subversive person*,[2] as defined in this act, which statement shall contain notice that it is subject to the penalties of perjury. No nomination petition, nomination paper or nomination certificate shall be received for filing by any county board of elections or by the Secretary of the Commonwealth unless accompanied by the

---

1. "AMENDMENT I.

" * * * Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

"AMENDMENT XIV.

" * * * All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

2. Emphasis ours throughout unless otherwise indicated.

statement required hereby, nor shall the name of any person who has failed or refused to make the statement be printed on any ballot or ballot label to be used at any general, municipal, primary, or special election."

The definition section of the act (65 P.S. § 212) defines subversive organization as,

"[A]ny organization which engages in or advocates, abets, advises or teaches, or a purpose of which is to engage in or advocate, abet, advise or teach activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States or of the Commonwealth of Pennsylvania, or of any political subdivision of either of them, by force or violence."

And, *subversive person* as,

"[A]ny person who *commits*, attempts to commit, or *knowingly* [3] aids in the

*commission* [4] of any act intended to overthrow, destroy, alter, or to assist in the overthrow, destruction or alteration of the constitutional form of government of the United States or of the Commonwealth of Pennsylvania, or any political subdivision of either of them *by force or violence, or who with the specific intent to further the unlawful aims thereof* [3] *is knowingly* a member of a subversive organization or a foreign subversive organization as defined in this act." [5]

Plaintiff complains that since "foreign subversive organization" is not defined in the act she cannot swear that she is not a member of an "organization, unnamed and undefined, which has unlawful aims *she has no intention of furthering.*" [6] But the definition of a subversive person (which, under the act, she must swear she is not) as far as it concerns membership in a subversive organization (which is specifically defined

3. Prior to the amendment of June 29, 1967, P.L. ——, No. 35 (65 P.S. § 212), the definition of subversive person did not contain the word "knowingly" (second line above), nor the words "with the specific intent to further the unlawful aims thereof."

4. Deleted at this point by the 1967 amendment were the words "or advocates, abets, advises or teaches by any means any person to commit, attempt to commit or aid in the commission of * * *."

5. Although the above Pennsylvania statute, as amended, does not expressly draw the distinction between acts (including advocacy) producing or inciting imminent lawless action and clearly harmless acts; see Brandenburg v. Ohio, 395 U.S. 444, 447–448, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), Sections 33, 51, 55, and 58 of the Pennsylvania Statutory Construction Act (46 P.S. § 501 ff.) preclude a construction of the amended Pennsylvania Loyalty Act as applying to acts, such as advocacy, "intended to overthrow * * * alter or assist in the alteration of the constitutional form of government * * * by force or violence," which acts are in fact harmless but are mistakenly believed to be capable of inciting to imminent lawless action. Section 33 (46 P.S. § 533) provides that "Words and phrases shall be construed according to * * * their

common and approved usage; * * * " Section 51 (46 P.S. § 551) provides that the object of interpretation and construction is to "effectuate the intention of the Legislature. * * * When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; * * * " Section 58 (46 P.S. § 558) states " * * * All * * * provisions of a law shall be liberally construed to effect their objects and to promote justice." It is clear that the Pennsylvania Legislature, in amending the Pennsylvania Loyalty Act in 1967 intended to have it conform to the constitutional requirements set forth in former decisions of the United States Supreme Court, and it will be so construed by the appellate courts of the Commonwealth. See Bentman v. Seventh Ward Democratic Executive Committee, 421 Pa. 188, 218 A.2d 261 (1966); cf. Bond v. Floyd, 385 U.S. 116, 128, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966).

6. Plaintiff's brief, page 7.

in the act) defines only one who *with specific intent to further the unlawful aims thereof* is *knowingly* a member.

The absence of a definition of "foreign subversive organization" when "subversive organization" is fully defined has no importance whatsoever in this case. "Subversive organization," without more, of course includes all subversive organizations, be they domestic or foreign, and so the words "foreign subversive organization" are superfluous and meaningless here. Statutory construction compels us to ignore these words, or to harmonize them with the balance of the act and read all of the words together to effectuate the purposes of the legislature and its intent to enact a statute which is constitutional and valid. Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); Driscoll v. Edison Light & Power Co., 307 U.S. 104, 59 S.Ct. 715, 83 L.Ed. 1134 (1939); Port Constr. Co. v. Gov't of Virgin Islands, 359 F.2d 663 (3d Cir. 1966); Statutory Construction Act, Act of May 28, 1937, P.L. 1019 (46 P.S. §§ 551, 552).

■ Plaintiff's major contention is that the loyalty oath, on its face and as applied to her, is unconstitutional under the United States Constitution in that it violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and through it the First Amendment "in that it infringes upon and invades plaintiff's right of freedom of speech, belief, association and free elections" [7] by imposing unconstitutional conditions on her right to be a candidate for public office; by "imposing prior restraints" upon her "through language which is vague, speculative, and uncertain, and by imposing sanctions, including the threat of disqualification from all elective office, as well as a finding of disloyalty and prosecution for perjury." [7]

In support of her contention plaintiff cites a number of Supreme Court and lower federal court cases holding statutes providing for loyalty oaths or containing other related provisions violative of First Amendment rights. Among the cases so cited, many of which deserve attention, are: Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Cramp v. Bd. of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Stewart v. Washington, 301 F.Supp. 610 (D.D.C. 1969); Hosack v. Smiley, 276 F.Supp. 876 (D.C.Col.1967).

We believe that the legislation under attack in the instant case is quite distinguishable from the statutes considered in the cases cited by plaintiff, and that the Pennsylvania Loyalty Act meets the constitutional requirements as delineated by the cases.

In Wieman v. Updegraff, *supra,* the oath was declared invalid because it barred from state employment persons solely on the basis of certain organizational memberships *regardless of their knowledge* concerning the organizations to which they had belonged. The Court held that such memberships might be innocent and in such case due process was violated.

The oath required of each employee of the State of Florida was, in Cramp v. Bd. of Public Instruction, *supra,* found to be so vague and uncertain that the State could not, consistently with the Due Process Clause of the Fourteenth Amendment, force an employee either to take such an oath at the risk of subsequent prosecution for perjury or face immediate dismissal. But, unlike our oath, the oath there required the swearing that the affiants had *never* "knowingly

---

7. Plaintiff's brief, page 4.

lent their aid, support, advice, counsel, or influence to the Communist Party" (368 U.S. at 285, 82 S.Ct. at 280). The Court correctly points out that in the not too distant past Communist Party candidates appeared legally on the ballot in many states, and that elsewhere the Communist Party supported and endorsed candidates of other parties and that in view of this it would be extremely difficult for anyone to honestly subscribe to the oath if he had ever supported any cause with knowledge that the Communist Party also supported it. This, of course, was an invalid oath as being too vague and too broad.

This brings us to one of the landmark cases in this field: Baggett v. Bullitt, *supra*. Here the Court followed the Cramp case and found the oath unconstitutionally broad, uncertain and vague. The oath in Baggett required teachers and State employees to swear that "he is not a subversive person: that he is not one who commits an act or who advises, teaches, abets or advocates by any means another person to commit or aid in the commission of any act intended to overthrow or alter, or to assist the overthrow or alteration, of the constitutional form of government by revolution, force, or violence" (377 U.S. at 367, 84 S.Ct. at 1320). The Court points out, at 369, 84 S.Ct. at 1321, that under the act there in question, a person "is subversive not only if he himself commits the specified acts but if he abets or advises another in aiding a third person to commit an act which will assist yet a fourth person in the overthrow or alteration of constitutional government." Additionally, the Court finds fault with the use of the word "revolution," which it says may include any rapid or fundamental change peacefully done. Neither of these vices appear in the Pennsylvania law.

The oath in Keyishian, *supra*, was struck down because,

"The regulatory maze created by New York is wholly lacking in 'terms susceptible of objective measurement.' Cramp v. Board of Public Instruction, *supra*, at 286, [82 S.Ct., at 280]. It has the quality of 'extraordinary ambiguity' found to be fatal to the oaths considered in Cramp and Baggett v. Bullitt. '[M]en of common intelligence must necessarily guess at its meaning and differ as to its application * * *.' Baggett v. Bullitt, *supra*, [377 U.S.], at 367, [84 S.Ct., at 1320]. Vagueness of wording is aggravated by prolixity and profusion of statutes, regulations, and administrative machinery, and by manifold cross-references to interrelated enactments and rules." (385 U.S. at 604, 87 S.Ct. at 684)

Here also the Court found "impermissible 'overbreadth'" where the law sought to bar employment both for associations which legitimately may be proscribed and for associations which may not be proscribed consistently with First Amendment rights because the law condemned mere knowing membership without a specific intent to further the unlawful aims of a subversive organization.

The Whitehill v. Elkins case, *supra*, about which we will have more to say later, followed the Keyishian case and found that when an oath requires under threat of perjury the statement that the applicant is not engaged "in one way or another" in an attempt to overthrow the government by force or violence, and that the act of assembly which the Court found was "tied to" the oath, condemned those who would "'alter' the form of government 'by revolution, force, or violence'" and also those who are members of a subversive organization, then the oath is constitutionally bad. As was said in a recent law review article, "'The act [in the Whitehill case] was vague because it was broad; it was broad because it lacked a *scienter* limit; and the absence of *scienter* was fatal for the consequent chilling effect upon 'conscientious teachers.'"[8]

8. 77 Yale L.J. 739, 757 (1968).

In none of the Supreme Court cases cited, nor in any other related case which has been called to our attention or which we have discovered (See: Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Lerner v. Casey, 357 U.S. 468, 78 S.Ct. 1311, 1324, 2 L.Ed.2d 1423 (1958); Beilan v. Bd. of Public Education, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958); Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951)) did the Court condemn all loyalty oaths. Indeed, in many of the cases the Court specifically pointed out that states quite properly could adopt measures to safeguard the public service from disloyal conduct or disloyal servants or employees. Baggett v. Bullitt, *supra;* Cramp v. Bd. of Public Instruction, *supra;* Garner v. Board of Public Works of City of Los Angeles, *supra.* In Wieman v. Updegraff, 344 U.S. 183, 195, 73 S.Ct. 215, 221, 97 L.Ed. 216 (1952), Mr. Justice Frankfurter, whom Mr. Justice Douglas joined, concurring, said:

> "The Constitution of the United States does not render the United States or the States impotent to guard their governments against destruction by enemies from within. It does not preclude measures of self-protection against anticipated overt acts of violence. Solid threats to our kind of government—manifestations of purposes that reject argument and the free ballot as the means for bringing about changes and promoting progress —may be met by preventive measures before such threats reach fruition. * * * "

In Gerende v. Board of Sup'rs of Elections, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745 (1951), a decision which has never been overruled and which has frequently been cited as authority, the Court affirmed a decision of the Maryland Court of Appeals which had denied Gerende, a candidate for office in Baltimore, a place on the ballot because he had refused to file an affidavit required by the Maryland law which provided, in effect, (after a representation by the Attorney General of the State) that he was not a person engaged in one way or another in an attempt to overthrow the government by force or violence, and that he was not knowingly a member of any organization engaged in such attempt. See also: Garner v. Board of Public Works of City of Los Angeles, *supra,* where a loyalty oath was upheld; and Beilan v. Bd. of Public Education, *supra,* where questions by a superintendent of schools to a teacher concerning the teacher's communistic affiliations were likewise upheld.

As late as 1967, and after the Court had struck down the loyalty oath in Keyishian v. Board of Regents; Baggett v. Bullitt; Cramp v. Bd. of Public Instruction; Wieman v. Updegraff; and Elfbrandt v. Russell, all *supra,* the Supreme Court, in Whitehill v. Elkins, *supra,* although there also striking down such an oath, again recognized the viability of Gerende v. Board of Sup'rs of Elections, 341 U.S. 56, 57–58, 71 S.Ct. 565, 95 L.Ed. 745, and Mr. Justice Harlan, in dissent, said:

> "Maryland will doubtless be surprised to learn that its meticulous efforts to conform the state 'loyalty oath' to the requirements of Gerende v. Election Board, 341 U.S. 56, [71 S.Ct. 565, 95 L.Ed. 745], have been to no avail. It will also be entitled to feel baffled by an opinion which, while recognizing the continuing authority of Gerende, undertakes to bypass that decision by a process of reasoning that defies analysis." (389 U.S. at 62, 88 S.Ct. at 188)

The United States Supreme Court, in 390 U.S. 36, 88 S.Ct. 816, 19 L.Ed.2d 812, without opinion, affirmed the District Court for the Southern District of New York in Knight v. Bd. of Regents, 269 F.Supp. 339 (1967), where that court had found that the loyalty oath required

of teachers was simple and clear and not violative of constitutional rights.

A three-judge district court, for the District of Colorado, in Hosack v. Smiley, 276 F.Supp. 876 (1967), likewise upheld a loyalty oath for teachers. This case was likewise affirmed without opinion, 390 U.S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275.

Like Maryland, Pennsylvania has attempted by the Amendment of 1967 to the Pennsylvania Loyalty Act, to make its loyalty oath conform with the pronouncements of the United States Supreme Court; particularly Keyishian, Baggett, Cramp, and Elfbrandt, and we conclude that she has done so.

Under the Pennsylvania act there cannot be prosecution for perjury for "guiltless knowing behavior" which was condemned in Cramp, for the Pennsylvania act defines a subversive person as one who "knowingly" aids in the commission of an act *intended* to overthrow the government by force or violence; and condemns only *knowing* membership in a subversive organization with *"specific intent"* to further the *unlawful* aims of the organization.

The 1967 Amendment deleted the words "or advocates, abets, advises or teaches" acts intended to overthrow the government, and so Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), which condemned "mere advocacy" as a violation of loyalty does not apply here.

The Pennsylvania act is reasonably clear and concise and no one of average intelligence could mistake its meaning, nor be chilled by the prospect of a perjury indictment because he might inadvertently swear falsely.

Plaintiff's argument that the enforcement of the Loyalty Act infringes upon Fifteenth Amendment rights[9] is not supported by any cases she cites and is without merit.

It is our judgment that the Pennsylvania Loyalty Act, Act of December 22, 1951, P.L. 1726, as amended by the Act of June 29, 1967, P.L. ——, No. 35 (65 P.S. § 212 et seq.), is constitutional; see Fitzgerald v. City of Philadelphia, 376 Pa. 379, 102 A.2d 887 (1954); that defendants' refusal to receive and file plaintiff's Nomination Paper on which plaintiff had failed to subscribe to the loyalty oath was proper, and that the injunction sought should be denied and judgment entered for the defendants.

## FINAL JUDGMENT

AND NOW, August 17th, 1970, after consideration of the findings of fact and conclusions of law in the opinion filed earlier today, IT IS ORDERED that plaintiff's application for a declaratory judgment and an injunction is DENIED, and judgment is entered for Joseph J. Kelley, Jr., Secretary of the Commonwealth of Pennsylvania, and C. Russell Welsh, Jr., Deputy Secretary of the Commonwealth of Pennsylvania, defendants, and against Carol E. Lisker, plaintiff.

---

9. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.