COMMUNIST PARTY OF INDIANA ET AL. *v.* WHIT-
COMB, GOVERNOR OF INDIANA, ET AL.

No. 72–1040.   Argued October 16, 1973—Decided January 9, 1974

BRENNAN, J., delivered the opinion of the Court, in which DOUGLAS, STEWART, WHITE, and MARSHALL, JJ., joined. POWELL, J., filed an opinion concurring in the result, in which BURGER, C. J., and BLACKMUN and REHNQUIST, JJ., joined, *post*, p. 451.

*Sanford Jay Rosen* argued the cause for appellants. With him on the brief was *Melvin L. Wulf.*

*Theodore L. Sendak,* Attorney General of Indiana, argued the cause for appellees. With him on the brief were *Darrel K. Diamond,* Assistant Attorney General, and *A. Frank Gleaves III,* Deputy Attorney General.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This is a loyalty oath case. The question for decision is whether the First and Fourteenth Amendments are violated by Indiana's requirement, Ind. Ann. Stat. § 29–3812 (1969), that "[n]o existing or newly-organized political party or organization shall be permitted on or to have the names of its candidates printed on the ballot used at any election until it has filed an affidavit, by its officers, under oath, that it does not advocate the over-

throw of local, state or national government by force
or violence . . . ."[1]

Appellants are the Communist Party of Indiana, a
new political party in Indiana, certain of its officers and
potential voters, and its candidates for President and
Vice President in the 1972 election.   Appellees are the
Indiana State Election Board and its members.   When
appellants applied to the Election Board in August 1972
for a place on Indiana's National Ballot for the 1972
general election without submitting the required oath,
the Board, on the advice of the Attorney General of
Indiana, rejected the application.   Appellants thereupon
filed this action in the District Court for the Northern
District of Indiana seeking a declaration of the uncon-

---

[1] Section 29–3812 reads in pertinent part as follows:

"No political party or organization shall be recognized and given
a place on or have the names of its candidates printed on the ballot
used at any election which advocates the overthrow, by force or
violence, of the local, state or national government, or which advo-
cates, or carries on, a program of sedition or of treason, and which
is affiliated or cooperates with or has any relation with any foreign
government, or any political party or group of individuals of any
foreign government.   Any political party or organization which is
in existence at the time of the passage of this act . . . or which shall
have had a ticket on the ballot one or more times prior to any
election, and which does not advocate any of the doctrines the advo-
cacy of which is prohibited by this act, shall insert a plank in its
platform that it does not advocate any of the doctrines prohibited
by this act.   No existing or newly-organized political party or orga-
nization shall be permitted on or to have the names of its candidates
printed on the ballot used at any election until it has filed an affidavit,
by its officers, under oath, that it does not advocate the overthrow
of local, state or national government by force or violence, and
that it is not affiliated with and does not cooperate with nor has
any relation with any foreign government, or any political party,
organization or group of individuals of any foreign government.
The affidavit herein provided for shall be filed with the state election
board or the county election board having charge of the printing of
the ballot on which such ticket is to appear."

stitutionality of § 29–3812, and an injunction requiring that the Election Board place the Party on the ballot. A three-judge court was convened and that court, on September 28, 1972, in an unreported opinion, declared the provision of § 29–3812 that is challenged on this appeal constitutional and issued an order requiring the Election Board to place the Communist Party and its nominees on the National Ballot only "[i]n the event that the Communist Party of Indiana shall submit an affidavit in keeping with this memorandum and order. . . ." [2] The Communist Party submitted an affidavit that, in addition to the statutory language, added the following:

"The term advocate as used herein has the meaning given it by the Supreme Court of the United States in *Yates* v. *United States,* 354 U. S. 298 at 320, 'the advocacy and teaching of concrete action for the forcible overthrow of the government, and not of principles divorced from action.'"

The Election Board rejected the affidavit and appellants, on October 3, returned to the District Court, seeking an order directing the Board to accept it. On the same day,

---

[2] The District Court's decision of September 28 also decided attacks upon the loyalty oath provision of § 29–3812 made in actions brought by two other new political parties, the American Independent Party and the Indiana Peace and Freedom Party. All three actions challenged, in addition to the "advocacy" provision, the provision of § 29–3812 requiring a party also to file an affidavit that "it is not affiliated with and does not cooperate with nor has any relation with any foreign government, or any political party, organization or group of individuals of any foreign government." The September 28 memorandum of the three-judge court declared this provision of § 29–3812 unconstitutional. The American Independent Party and the Indiana Peace and Freedom Party then filed affidavits accepted by the Election Board and were placed on the National Ballot for the 1972 elections. On November 11, the Election Board appealed that portion of the order to this Court. We summarily affirmed. *Whitcomb* v. *Communist Party,* 410 U. S. 976 (1973).

the Election Board filed a motion requesting reconsideration of the order of September 28.[3]  The District Court, on October 4, denied both motions by order entered that day.  Appellants on October 10 filed a notice of appeal to this Court to enable them to seek emergency relief. That effort was abandoned, and appellants then sought leave of the District Court to withdraw the notice of appeal in order that the District Court might act on a motion of appellants, also filed October 10, that the District Court amend its September 28 order to include a determination that § 29–3812 was constitutional "only insofar as it proscribes advocacy directed at promoting unlawful action, as distinguished from advocacy of abstract doctrine."  On October 31, the District Court entered an order granting leave to withdraw the notice of appeal of October 10 but denying the motion to amend the September 28 memorandum.

Appellants refiled their notice of appeal on November 29.  Appellees moved to dismiss the appeal as jurisdictionally untimely, arguing that the 60-day period for appeal, 28 U. S. C. § 2101 (b), expired on November 27. We postponed consideration of the question of our jurisdiction to the merits.  410 U. S. 981 (1973).  We hold that the appeal was timely.  Appellees' motion for reconsideration of October 3 suspended the finality of the judgment of September 28 until the District Court's denial of the motion on October 4 restored it.  Time

---

[3] Section 29–3801, Ind. Stat. Ann. (1969), provides for ballot listing of any party that files petitions containing signatures of one-half of one percent "of the total vote of all parties cast in the state for secretary of state at the last preceding general election."  The sufficiency of the Communist Party petitions in this respect was challenged by appellees in the District Court but was not discussed in the court's September 28 memorandum although the issuance of the injunction presupposed a decision adverse to appellees.  The motion for reconsideration requested the court to reconsider that result.

for appeal thus began to run from October 4 and the notice of appeal filed November 29 was timely.[4] As to the merits, we hold that the loyalty oath requirement of § 29–3812 violates the First and Fourteenth Amendments,[5] and therefore reverse the judgment of the District Court.[6]

---

[4] Appellees also argue that the notice of appeal of November 29 was ineffective because the earlier notice of October 10 divested the District Court of jurisdiction and that that jurisdiction could not have been revested by the granting of leave to withdraw the October 10 notice. But since the October 10 notice was clearly timely, that argument is reduced to an attack on the untimeliness under Supreme Court Rule 13 (1) of the filing of the jurisdictional statement on January 26, 1973. Timely docketing of the jurisdictional statement is not, however, a jurisdictional requisite. *Johnson* v. *Florida,* 391 U. S. 596, 598 (1968).

Appellees' brief also invokes § 3 of the Communist Control Act of 1954, 68 Stat. 776, 50 U. S. C. § 842, providing that "[t]he Communist Party of the United States . . . [is] not entitled to any of the rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the laws of the United States or any political subdivision thereof . . . ." We have difficulty understanding appellees' argument that this statute is applicable to the Communist Party of Indiana or in any way relevant to the issues in this case. The statute was not relied upon by either the Election Board, or the District Court when it denied declaratory relief. In any event, insofar as the argument is that this statute bars the Communist Party of Indiana from maintaining this action, it is rejected. See *Communist Party, U. S. A.* v. *Catherwood,* 367 U. S. 389 (1961).

[5] Appellants also contend that the requirement is constitutionally precluded as an oath different from that prescribed for a President by Art. II, § 1, and for any other state or federal officer by Art. VI, cl. 3. See *Cole* v. *Richardson,* 405 U. S. 676 (1972). In view of our result we need not address those contentions.

[6] The only question presented in the jurisdictional statement is whether § 29–3812 is facially valid. Thus, we do not reach the question whether the Election Board's apparent failure to require the Republican and Democratic Parties, the two major parties in Indiana, to comply with the statute rises to the level of a denial of equal protection of the law *as applied,* or was within the Board's

Loyalty oath cases are not strangers to this Court, see Note, Loyalty Oaths, 77 Yale L. J. 739 (1968), but the constitutional questions presented in earlier cases arising from their use to limit access to the ballot have not had plenary consideration.[7] The District Court decided this case under the pressure of a ballot-printing deadline, and its memorandum opinion states no reasons and cites no authorities to support the court's holding that "that portion of the statute providing 'that it does not advocate the overthrow of local, state or national government by force or violence,' is constitutional and hence enforceable by Indiana."

Appellees do not deny that § 29–3812 exacts a broad oath embracing advocacy of abstract doctrine as well as advocacy of action. Yet this Court has held in many contexts that the First and Fourteenth Amendments render invalid statutes regulating advocacy that are not limited to advocacy of action. And, as we have so often emphasized, "[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *NAACP* v. *Button*, 371 U. S. 415, 438 (1963).

We most recently summarized the constitutional prin-

---

"prosecutorial discretion." We note, however, that the only relevant testimony in the District Court, given by the Board's clerk, is entirely silent as to the reasons behind the omission.

[7] *E. g.*, *Lisker* v. *Kelley*, 401 U. S. 928 (1971), summarily aff'g 315 F. Supp. 777 (1970); *Gerende* v. *Board of Supervisors*, 341 U. S. 56 (1951), presenting a constitutional challenge to a Maryland statute imposing a loyalty requirement on candidates for municipal office rested on "the narrowing construction tendered by the Attorney General [of Maryland] during oral argument so as to avoid the constitutional issue that was argued." *Whitehill* v. *Elkins*, 389 U. S. 54, 58 (1967). And *Socialist Labor Party* v. *Gilligan*, 406 U. S. 583 (1972), was dismissed as insufficiently concrete and mature to permit adjudication, on the authority of *Rescue Army* v. *Municipal Court*, 331 U. S. 549 (1947).

ciples that have evolved in this area in *Brandenburg* v. *Ohio,* 395 U. S. 444 (1969). We expressly overruled the earlier holding of *Whitney* v. *California,* 274 U. S. 357 (1927), that "without more, 'advocating' violent means to effect political and economic change involves such danger to the security of the State that the State may outlaw it." 395 U. S., at 447. For, we said:

> "[L]ater decisions have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. As we said in *Noto* v. *United States,* 367 U. S. 290, 297–298 (1961), 'the mere abstract teaching . . . of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.' . . . A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments. It sweeps within its condemnation speech which our Constitution has immunized from governmental control. Cf. *Yates* v. *United States,* 354 U. S. 298 (1957) . . . ." *Id.,* at 447–448.

This principle that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action" has been applied not only to statutes that directly forbid or proscribe advocacy, see *Scales* v. *United States,* 367 U. S. 203 (1961); *Noto* v. *United States,* 367 U. S. 290 (1961); *Yates* v. *United States,*

354 U. S. 298 (1957); but also to regulatory schemes that determine eligibility for public employment, *Keyishian* v. *Board of Regents,* 385 U. S. 589 (1967); *Elfbrandt* v. *Russell,* 384 U. S. 11 (1966); *Cramp* v. *Board of Public Instruction,* 368 U. S. 278 (1961); see also *United States* v. *Robel,* 389 U. S. 258 (1967); tax exemptions, *Speiser* v. *Randall,* 357 U. S. 513 (1958); and moral fitness justifying disbarment, *Schware* v. *Board of Bar Examiners,* 353 U. S. 232 (1957).

Appellees argue that the principle should nevertheless not obtain in cases of state regulation of access to the ballot. We perceive no reason to make an exception, and appellees suggest none. Indeed, all of the reasons for application of the principle in the other contexts are equally applicable here. "To be sure, administration of the electoral process is a matter that the Constitution largely entrusts to the States. But, in exercising their powers of supervision over elections and in setting qualifications for voters, the States may not infringe upon basic constitutional protections." *Kusper* v. *Pontikes, ante,* at 57 (footnote omitted). At stake are appellants' First and Fourteenth Amendment rights to associate with others for the common advancement of political beliefs and ideas. "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Ibid.; Williams* v. *Rhodes,* 393 U. S. 23, 30 (1968). At stake as well are appellants' interests as party members in casting an effective ballot. See *Bullock* v. *Carter,* 405 U. S. 134, 142–144 (1972).

Thus, burdening access to the ballot, rights of association in the political party of one's choice, interests in casting an effective vote and in running for office, not because the Party urges others "to *do* something, now or in the future . . . [but] . . . merely to *believe* in something," *Yates* v. *United States, supra,* at 325, is to

infringe interests certainly as substantial as those in public employment, tax exemption, or the practice of law. For "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights . . . ." *Reynolds* v. *Sims,* 377 U. S. 533, 562 (1964). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry* v. *Sanders,* 376 U. S. 1, 17 (1964).

Appellees argue: "It is fraudulent for a group seeking by violent revolution to overthrow our democratic form of government to disguise itself as a political party and use the very forms of the democracy it seeks to subvert in order to gain support and carry on its nefarious ends." Brief for Appellees 7. Again, they argue "that the affidavit required under the statute refers to the official actions of the party itself, thus reducing to a minimum any possibility of 'innocent involvement' in activities which might be considered advocacy." *Id.,* at 10. As we understand appellees, this is an argument that, at least for purposes of determining whether to grant a place on the ballot, any group that advocates violent overthrow as abstract doctrine must be regarded as necessarily advocating unlawful action. We reject that proposition. Its acceptance would only return the law to the "thoroughly discredited" regime of *Whitney* v. *California,* 274 U. S. 357 (1927), unanimously overruled by the Court in *Brandenburg* v. *Ohio,* 395 U. S., at 447, 449.[8]

*Reversed.*

---

[8] Cf. *Noto* v. *United States,* 367 U. S. 290, 298 (1961), a prosecution under the Smith Act, 18 U. S. C. § 2385, where we held that the constitutional limitations require that criminal advocacy by the Communist Party be proved by "some substantial direct or circumstantial evidence of a call to violence now or in the future which is both sufficiently strong and sufficiently pervasive to lend color to the otherwise ambiguous theoretical material regarding Communist Party teaching, and to justify the inference that such a call to violence may

MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACKMUN, and MR. JUSTICE REHNQUIST join, concurring in the result.

I concur in the result. In my view it was quite unnecessary to reach the issue addressed by the Court.

It was established at trial that appellees had certified the Democratic and Republican Parties despite the failure of party officials to submit the prescribed affidavits under Ind. Ann. Stat. § 29–3812 (1969).[1] In *Williams* v. *Rhodes,* 393 U. S. 23, 31 (1968), this Court held that a discriminatory preference for established parties under a State's electoral system can be justified only by a "compelling state interest." In the present case, no colorable justification has been offered for placing on appellants burdens not imposed on the two established

---

fairly be imputed to the Party as a whole, and not merely to some narrow segment of it." See also *Scales* v. *United States,* 367 U. S. 203 (1961); *Yates* v. *United States,* 354 U. S. 298 (1957).

[1] The complaint in this case expressly alleged that § 29–3812 subjected appellants to burdens not imposed on the Republican and Democratic Parties, and proof at trial was directed to that issue. The Court now maintains that this issue cannot be considered because it was not expressly raised in the jurisdictional statement. *Ante,* at 446–447, n. 6. Supreme Court Rule 15 (1) (c) provides, however, that the jurisdictional statement "will be deemed to include every subsidiary question fairly comprised therein" and that "questions set forth in the jurisdictional statement or fairly comprised therein will be considered by the court." The issue of discriminatory application of the statute certainly falls within the gravamen of appellants' jurisdictional statement and should therefore be considered. See, *e.g., United States* v. *Arnold, Schwinn & Co.,* 388 U. S. 365, 371–372 n. 4 (1967). Moreover, the appropriate exercise of judicial power requires that important constitutional issues not be decided unnecessarily where narrower grounds exist for according relief. This' consideration applies even though such grounds are not raised in the jurisdictional submissions. *Boynton* v. *Virginia,* 364 U. S. 454, 457 (1960). Cf. *Barr* v. *Matteo,* 355 U. S. 171, 172 (1957).

parties.[2]   It follows. that the appellees' discriminatory application of the Indiana statute denied appellants equal protection under the Fourteenth Amendment.[3]

---

[2] The Court's intimation that a prima facie case of constitutional deprivation was not established because Board officials were "silent as to the reasons behind the omission" of the established parties from the affidavit requirement (*ante,* at 447 n. 6) misses the point.   Nothing more need be shown than that the statute was in fact discriminatorily applied.   It is the Board officials, not the appellants, who must then come forth with reasons justifying the discriminatory application of the statute.

[3] In view of this patently unconstitutional application of the statute, there is no occasion to reach the broader issue addressed by the Court today.   Although I express no conclusion on that issue, it should be noted that this is the first case touching upon the type of oath which may be required of a candidate for the office of President of the United States.   The Indiana oath, of course, is required of the party rather than its presidential candidate.   But it could be argued that *Yates* v. *United States,* 354 U S. 298 (1957), and its progeny are not controlling here.   Under Art. VI, cl. 3, all state and federal officers are bound by oath "to support this Constitution," and under Art. II, § 1, cl. 8, the President must swear that he will "faithfully execute the Office . . . and will to the best of [his] Ability, preserve, protect and defend the Constitution of the United States."   Art. II, § 3, also imposes on the President the affirmative duty to "take Care that the Laws be faithfully executed." Neither the effect of these explicit constitutional obligations nor the responsibility of a chief executive official of government to enforce the rule of law was a relevant issue in anv of the *Yates* line of cases.   Cf. *Cole* v. *Richardson,* 405 U. S. 676 (1972).