**SOCIALIST WORKERS PARTY et al.**

v.

**Paul J. HARDY et al.**

Civ. A. No. 77–2211.

United States District Court, E. D. Louisiana.

Aug. 5, 1977.

R. James Kellogg, New Orleans, La., for plaintiffs.

Joseph W. Thomas, New Orleans, La., for defendants.

## MEMORANDUM OPINION

EDWARD J. BOYLE, Sr., District Judge:

█ Plaintiffs in this Section 1983 action are the Socialist Workers Party,[1] prospective candidates for mayor and city councilman for the City of New Orleans, and several registered voters who allege a desire to vote for these candidates should they qualify. They seek injunctive and declaratory relief from the requirements of LSA–R.S. 14:372, which provides, in substance, that no person can become a candidate for any public office in Louisiana unless the prospective candidate attaches to and files with his nominating papers a sworn affidavit to the effect that he or she "is not and never has been a communist or a subversive person as defined in R.S. 14:359."

Defendants Paul J. Hardy, Secretary of State, and Edwin W. Edwards, Governor, are sued in their capacity as state officials responsible for the administration and enforcement of Louisiana's election laws. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1343(3), 2201 and 2202.

Plaintiffs claim that this Louisiana statute unconstitutionally infringes the freedom of expression and association guaranteed them by the First Amendment. This argument is supported predominantly by citation of recent United States Supreme Court decisions which have dealt with the right of access to the ballot and the right to be free from state inquiry into one's political beliefs and associations. Defendants' only response to the merits of this argument completely ignores the strongest authority against their position, and simply offers a conclusionary and unsupported argument that the statute is constitutional because it imposes sanctions only on the commission of illegal acts and on knowing membership in an organization with an illegal purpose. The defendants nowhere offer a documented, affirmative argument in support of the constitutionality of the statute as written. On the contrary, their most strongly urged argument, which asks this court to apply the doctrine of abstention, and which offers a somewhat tortured reading of the statute by the Attorney General of Louisiana, tends to underscore the fact that it is very difficult to read the statute in a constitutional manner.

█ The defendants have urged that it is appropriate for the court to abstain from deciding the merits of this case, as the statute involved is a criminal statute which has not been reviewed by the Supreme

---

1. Defendants' argument that the Socialist Workers Party lacks standing is without merit. Citing *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), defendants urge that since the Party can neither become a candidate nor vote for one, it has no personal stake in the outcome of this controversy. However, the United States Supreme Court has long ap-

proved of associational standing in cases such as this, "where constitutional rights of persons who are not immediately before the Court could not be effectively vindicated except through an appropriate representative before the Court." *N.A.A.C.P. v. State of Alabama*, 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958).

Court of Louisiana. The Attorney General of Louisiana, speaking for the defendants, has offered a narrowed construction[2] of the statute which, he submits, should save the statute from unconstitutionality. The only authority offered for this invocation of the abstention doctrine is a per curiam decision of the Supreme Court which had nothing to do with abstention. *Gerende v. Board of Supervisors*, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745 (1951). There the Court avoided striking down Maryland's requirement of a loyalty oath for prospective candidates by accepting a narrowed construction of the oath which had already been made by a Maryland court. Subsequently, in *Whitehill v. Elkins*, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967), the Court found it necessary to invalidate a teacher's oath based on the same Maryland statute. Despite the acceptable narrow *judicial* construction approved in *Gerende*, the Court concluded that the underlying statute was unconstitutionally vague and violative of First Amendment rights. Thus not only is *Gerende* not authority for abstention, but *Whitehill*, dealing with the same statute, is authority for the proposition that an Attorney General alone may not confer constitutionality on an otherwise unconstitutional law. Here, the Louisiana Attorney General's proffered reading does not have the support of judicial construction. Furthermore, his reading is contrary to the words of the statute itself. The Attorney General has attempted to apply the definition which the statute, in LSA–R.S. 14:359(8), gives to "subversive organizations" to "subversive persons," which is separately defined in section 359(9). Section 359(8) does require knowing performance of illegal acts for an organization to be labelled "subversive." However, section 359(9) clearly requires *either* knowing membership in a subversive organization *or* actual commission of illegal acts for one to be a subversive person.

In any event, for reasons stated below, this court feels that the challenged oath is, in its present form, insusceptible of an interpretation which would render it constitutional. Even assuming that the Attorney General's interpretation is constitutional, there is no guarantee that future administrations will be as willing to read the statute in as enlightened a manner, nor even that the Supreme Court of Louisiana would accept his interpretation. Any torturing of the statute which might result in a constitutional reading could not alter the fact that reasonable men could still read the plain words of the statute so as to be uncertain as to whether their otherwise constitutionally protected activities are subject to the statute. *See Baggett v. Bullitt*, 377 U.S. 360, 375–79, 84 S.Ct. 1316, 1324–27, 12 L.Ed.2d 377 (1964).

The current tool for the enforcement of the provisions of LSA–R.S. 14:372 is a Qualifying Form, promulgated by Louisiana's Secretary of State, which must be completed and sworn to by all prospective candidates for office. The pertinent portion appears on the Form as item 5. It requires that the candidate swear that: "He is not and never has been a Communist or a subversive person as defined by LSA–R.S. 14:359." A reference to LSA–R.S. 14:359 reveals the following relevant definitions:

(2) A "Communist Action Organization" is the Communist Party Of The United States, the communist party of any state or foreign nation, the Progressive Labor Movement, or any other organization (other than a diplomatic representative or mission of a foreign government accredited as such by the U.S. Department of State), which is substantially directed, controlled or dominated by any of the foreign governments controlling the world Communist movement described in

**2.** The defendants assert that: "As the Attorney General of Louisiana reads the statute, it only applies to persons who are or were active members of organizations that advocate the overthrow of the government by revolution, force, violence, or other unlawful means, *and*

who knowingly performed or carried out an affirmative act to achieve such overthrow or destruction, with the intent to incite action rather than engage in the mere exposition of theory. See, R.S. 14:359(8)." Brief for Defendant at 3.

R.S. 14:358,[3] and shall include any section, branch, fraction or all of any such organization as is described in this Section.

(3) A "Communist" is any person who has accepted the discipline of or has become a member of a communist action organization and has remained under the discipline thereof or remained a member thereof knowing it to be such an organization.

(8) A "Subversive Organization" is any organization which advocates the overthrow or destruction of the United States, the state of Louisiana, or any political subdivision thereof by revolution, force, violence or any other unlawful means, and performs or carries out as a function of the organization, known, agreed to, or knowingly performed by any of the officers of the organization, any affirmative act, including abetting, materially assisting, advising or teaching such overthrow or destruction, with the intent to incite action rather than engage in the mere exposition of theory.

(9) A "Subversive Person" is any person who knowingly is a member of a subversive organization knowing the said organization to be subversive within the meaning of R.S. 14:358–14:373 or any person who commits any act intended to bring about the overthrow or destruction of the United States, the state of Louisiana or any political subdivision thereof by revolution, force, violence or other unlawful means.

The precise nature of the rights intertwined with the right of candidates to access to the ballot has recently been outlined by the Supreme Court: "At stake are [plaintiff's] First and Fourteenth Amendment rights to associate with others for the common advancement of political beliefs and ideas." *Communist Party of Indiana v. Whitcomb*, 414 U.S. 441, 449, 94 S.Ct. 656, 662, 38 L.Ed.2d 635 (1974). This calls into play the full panoply of protection afforded to First Amendment freedoms. In *Whitcomb*, the Court, in the context of limiting access to the ballot, fully applied the principle for protection of First Amendment rights, as enunciated in *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), which allows a state to limit political advocacy of the use of force or law violations only where "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447, 89 S.Ct. at 1829. As the Court noted in *Whitcomb*, there is no reason not to apply this principle in ballot access cases in the same manner and to the same extent as in other cases where it has received more complete extrapolation. Other cases where the principle which was expressed in *Brandenburg v. Ohio* has been applied to include not only cases of direct advocacy such as *Brandenburg*, but also cases involving loyalty oaths required of public employees, e. g., *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), and bar admission cases involving loyalty oaths, e. g., *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

Using this principle, the Court has established the basic guidelines under which a state may regulate or inquire into association with groups having illegal purposes: "Employment [and by extension, access to the ballot] may not be conditioned on an oath denying past, or abjuring future, associational activities within constitutional protection; such protected activities include membership in organizations having illegal purposes unless one knows of the purpose *and shares a specific intent to promote the* illegal purpose." (Emphasis supplied). *Cole v. Richardson*, 405 U.S. 676, 680, 92 S.Ct. 1332, 1335, 31 L.Ed.2d 593 (1971). *See also Baird v. State Bar of Arizona*, 401 U.S. 1, 9, 91 S.Ct. 702, 707, 27 L.Ed.2d 639 (1971) (Stewart, J., concurring); *Law Students*

---

**3.** LSA–R.S. 14:358 offers a lengthy and detailed description of the term "world communist movement" as it is used in section 359. It generally describes the movement as one which is controlled by foreign governments and which, because it seeks to overthrow the U.S. government by unlawful means, constitutes a clear and present danger to the citizens of Louisiana, justifying various means of legislative control.

*Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 165, 91 S.Ct. 720, 728, 27 L.Ed.2d 749 (1971).

In *Whitcomb* the Court used this standard to strike down an Indiana law which stipulated that no party which advocated the violent overthrow of any local, state or national government could enter its candidates' names on the ballot. The Court felt that the impermissible effect of this law was to burden access to the ballot with a prohibition of mere belief in a doctrine, and that this was just the effect forbidden by *Brandenburg v. Ohio*. Similarly, in *Baird v. State Bar of Arizona*, the Court found as unconstitutionally infirm a requirement that applicants to the state bar answer a question concerning whether they had ever been a member of the Communist Party or any organization that advocates overthrow of United States government by force or violence.

By contrast, in *Law Students Civil Rights Research Council, Inc. v. Wadmond* the Court upheld a requirement of an oath generally affirming support of the Constitutions of the United States and New York because it was not intended to penalize any political beliefs and it was a justifiable attempt to assure applicants' fitness for membership in the bar. In *Cole v. Richardson*, supra, the Court approved a similar oath required of Massachusetts' state employees to uphold the U.S. government and oppose its overthrow by illegal means because it created no specific responsibilities, but merely assured "that those in position of public trust were willing to commit themselves to abide by the constitutional processes of our system." 405 U.S. at 684, 92 S.Ct. at 1337.

■ In 1973, the Fifth Circuit Court of Appeals struck out substantial portions of the extensive loyalty oath required of Texas candidates. *Socialist Workers Party v. Hill*, 483 F.2d 554 (5 Cir.1973). The Texas oath was dissimilar to Louisiana's, as well as much more extensive. Nevertheless, the Fifth Circuit's decision offers significant guidance in the area of loyalty oaths and access to the ballot. Relying heavily on *Cole v. Richardson*, the court held that:

No state may condition the right to seek elective office on the willingness of candidates to foreswear their political beliefs and thoughts. The Socialist and the Communist may take their place by the Democrat and the Republican and compete for the ballots of Texans and Americans. 483 F.2d at 557.

This court is bound to follow this general principle in analyzing Louisiana's statute in contest.

■ In *Lisker v. Kelley*, 315 F.Supp. 777 (M.D.Pa.1970), *aff'd without opinion*, 401 U.S. 928, 91 S.Ct. 927, 28 L.Ed.2d 210 (1971), the district court upheld a portion of the Pennsylvania Loyalty Act, 65 P.S. § 212 *et seq.*, which required prospective candidates to file with their nomination papers an affidavit to the effect that they were not a subversive person, as defined in other sections of the Act. The requirement was found to be constitutional because "subversive person" was carefully and clearly defined so that a candidate had only to swear that he was not knowingly a member of a subversive organization, and did not share "the specific intent to further the unlawful aims thereof." 315 F.Supp. at 779. A comparison of the Louisiana statutes with Pennsylvania's law serves to underline the constitutional infirmities in the Louisiana statute. Louisiana, unlike Pennsylvania, penalizes mere membership in an organization having illegal purposes. LSA–R.S. 14:372 requires the candidate to make oath that he "is not and never has been a communist . . . as defined in R.S. 14:359." Even more suspect is the definition of a "Communist" in section 359(3) as "any person who has accepted the discipline or become a member of a communist action organization." This is an obvious penalty placed on mere political beliefs or membership in an organization having illegal political aims which has repeatedly been condemned by the United States Supreme Court. *See, e. g., Communist Party of Indiana v. Whitcomb*, supra; *Cole v. Richardson*, supra. Such condemnation of mere membership, no matter how knowing, with-

out the requirement of a specific intent to bring about immediate illegal results, violates the standards of *Brandenburg v. Ohio,* which allows abrogation of First and Fourteenth Amendment rights only when there is a danger of imminent lawless action. To condition the right of access to the ballot upon non-membership in certain organizations, or upon non-belief in certain ideologies is impermissible both because it places an unwarranted burden on the right of free association and because it forbids access to the ballot to those who pose no immediate and intended danger to our political system.

■ LSA–R.S. 14:372 requires the candidate to make the further oath that he "is not and never has been . . . a subversive person as defined in R.S. 14:359." Under R.S. 14:359(9) a "subversive person" may be a "person who knowingly is a member of a subversive organization knowing the said organization to be subversive within the meaning of R.S. 14:358–14:373 . . . ." But the statute fails to require the existence of specific intent to promote the illegal goals of such organization. *See Cole v. Richardson,* supra; *Law Students Civil Rights Research Council, Inc. v. Wadmond,* supra. Or "a subversive person" may be one "who commits any act intended to bring about the overthrow or destruction of the United States, the state of Louisiana or any political subdivision thereof by revolution, force, violence or other unlawful means." The court feels that this portion of Louisiana's statute falls "within the compass of those decisions of the [United States Supreme] Court holding that a law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." *Baggett v. Bullitt,* supra, 377 U.S. 360, 84 S.Ct. at 1320. *See also Cramp v. Board of Public Instruction,* 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). Under Lou-

isiana's statute, a person is subversive if he commits an act tending to alter any governmental unit by "revolution." As the Court noted in *Baggett,* revolution "includes any rapid or fundamental change." *Baggett v. Bullitt,* supra, 377 U.S. 360, 84 S.Ct. at 1321. There are certainly acts intended to bring about rapid fundamental changes in government, such as constitutional amendment, which are well within constitutional protection. Furthermore, the use of the verb "commits" could leave men of common intelligence confused as to whether the statute requires disavowal of past, present or future activities. If a prospective candidate is tacitly required to admit past criminal activities the oath may, in effect, be inquiring into areas protected by the Fifth Amendment.

An examination of the entire scheme of LSA–R.S. 14:358–14:373, which is designed to control communist and subversive activities, produces even more uncertainty as to which activities are proscribed. Section 358, labelled "Subversive activities and communist control law; legislative finding of fact and declaration of necessity," is referred to often by the definitional sections of LSA–R.S. 14:359 in order to describe the type of organization and persons whose activity is being controlled. Section 358, however, is little more than a rambling description of foreign-controlled politically criminal conspiracies. Any attempt to read the entire statute together, referring from section to section in an effort to determine just what a candidate is forswearing by signing Louisiana's Qualification Form, results in confusion and uncertainty. The statute is vague and overbroad. *Baggett v. Bullitt,* supra.

Considering the foregoing, we conclude that LSA–R.S. 14:372 contravenes the First and Fourteenth Amendments to the Constitution of the United States and is, therefore, invalid.[4]

---

4. In addition to declaratory relief, the plaintiffs have prayed for an injunction restraining enforcement of LSA–R.S. 14:372, attorney's fees pursuant to 42 U.S.C. § 1988, as amended, and costs.

Adjudication of the claim for attorney's fees and costs is reserved.

In conference (via telephone conference call on August 4, 1977), Joseph W. Thomas, Esq., Assistant Attorney General of the State of Lou-

isiana and trial counsel for the defendants herein, assured the Court and R. James Kellogg, Esq., counsel of record for plaintiffs, that any final judgment declaring LSA–R.S. 14:372 invalid would be respected by the defendants without the necessity for an injunction permanently enjoining enforcement of said statute. Upon the condition of such assurance, counsel for plaintiffs withdrew his demand for the issuance of a permanent injunction against enforcement of LSA–R.S. 14:372.