(September 10, 1993)

■ SUFFOLK COUNTY DEMOCRATIC COMMITTEE et al., Appellants, v ROBERT J. GAFFNEY, as Suffolk County Executive, et al., Respondents. [601 NYS2d 935] —In an action for a judgment declaring, *inter alia,* Local Laws, 1993, No. 12 of the County of Suffolk unconstitutional and for injunctive relief, the plaintiffs appeal from so much of an order of the Supreme Court, Suffolk County (Underwood, J.), entered May 28, 1993, as (1) granted that branch of the defendants' motion which was to dismiss the complaint insofar as it was asserted by the plaintiffs Suffolk County Democratic Committee and Dominick J. Baranello, on the ground of lack of standing, (2) granted that branch of the defendants' motion which was to dismiss those causes of action asserted by the remaining plaintiffs which alleged violations of Municipal Home Rule Law § 10 (1) (a) (13), the Voting Rights Act (42 USC § 1973), and the Civil Rights Act (42 USC §§ 1983, 1985), and (3) denied their application for a preliminary injunction.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiffs commenced the instant action challenging the

constitutionality of Local Laws, 1993, No. 12 of the County of Suffolk, which reapportioned the Suffolk County Legislature. In addition, the plaintiffs sought a preliminary injunction barring Suffolk County from instituting the reapportionment plan and from holding elections for the Suffolk County Legislature until a valid reapportionment plan was adopted.

The Supreme Court properly determined that the plaintiff Suffolk County Democratic Committee (hereinafter the Committee) lacked standing to challenge the validity of the reapportionment plan. The Committee sued on its own behalf and not on behalf of its members. Under these circumstances, the Committee failed to establish that it would suffer any threatened or actual harm as a result of reapportionment (see, Warth v Seldin, 422 US 490). Furthermore, the Committee has no standing to assert a claim under the Voting Rights Act (see, 42 USC § 1973) since that statute provides a cause of action to persons whose right to vote is abridged or denied as a result of their race or color (see, 42 USC § 1973). Neither does the Committee have standing to assert a civil rights cause of action under 42 USC § 1983 since the Committee does not assert that the reapportionment plan effects an injury to its members right of association (see, Albany Welfare Rights Org. v Wyman, 493 F2d 1319, cert denied sub. nom. Lavine v Albany Welfare Rights Org., 419 US 838), nor is it representing its members' interests (see, Colorado Taxpayers Union v Romer, 750 F Supp 1041, appeal dismissed 963 F2d 1394, cert denied — US —, 113 S Ct 1360; Collin v Smith, 447 F Supp 676, affd 578 F2d 1197, cert denied 439 US 916; Socialist Workers Party v Hardy, 480 F Supp 941, affd 607 F2d 704). Finally, the Committee has no standing to assert a cause of action under 42 USC § 1985 since it is not a member of a class that the statute was designed to protect (see, Bettio v Village of Northfield, 775 F Supp 1545; Harrison v KVAT Food Mgt., 766 F2d 155; Rodriguez v Nazario, 719 F Supp 52). Since the plaintiff Baranello asserted his rights in this matter "solely as the Chairman" of the Committee, the Supreme Court properly held that, acting in that capacity, he too lacked standing.

The Supreme Court properly dismissed the cause of action under Municipal Home Rule Law § 10 (1) (a) (13). That provision does not apply to Suffolk County since the County operates under a charter form of government (see, Mehiel v County Bd. of Legislators, 175 AD2d 109; Matter of Ames v Smoot, 98 AD2d 216).

The cause of action alleging a violation of the Voting Rights Act is grounded on the assumption that the reapportionment

plan improperly split minority groups among contiguous districts, thus diluting the ability of those groups to elect candidates of their choice. In order to establish a cause of action under 42 USC § 1973, the plaintiffs had to establish three threshold conditions: (1) that a minority group is sufficiently large and compact so as to constitute a majority in any one district; (2) that the group is politically cohesive; and (3) that the white majority votes sufficiently as a bloc to usually ensure the defeat of the minority's preferred candidate *(see, Growe v Emison,* 507 US —, —, 113 S Ct 1075, 1084). In the instant case, the complaint contains only conclusory allegations as to these three threshold criteria and is utterly devoid of any factual support. Thus, the Supreme Court properly dismissed this cause of action *(see, Elsky v KM Ins. Brokers,* 139 AD2d 691).

The Supreme Court also properly dismissed the cause of action alleging a violation of the Civil Rights Act because the complaint did not contain any allegations that the reapportionment plan was instituted pursuant to an "official policy or custom" *(Katz v Morgenthau,* 709 F Supp 1219, 1228; *see also, Monell v New York City Dept. of Social Servs.,* 436 US 658) or that the defendants harbored a " 'class-based invidious discriminatory animus' " against any particular group of individuals and "that this prejudice motivated the alleged wrongful conduct against the plaintiffs" *(Nicoleau v Brookhaven Mem. Hosp. Ctr.,* 181 AD2d 815, 817; *see also, Gleason v McBride,* 869 F2d 688, 695).

Finally, the plaintiffs argue that the Supreme Court erred when it denied their application for a preliminary injunction after they had established a prima facie case on their equal protection cause of action. We agree with the Supreme Court that the reapportionment plan is constitutionally suspect because of the alleged 20.85% deviation from population equality between the most over-represented and most under-represented districts *(see, Reynolds v Sims,* 377 US 533; *Swann v Adams,* 385 US 440). That is not to say, however, that the reapportionment plan is per se invalid *(see, Brown v Thompson,* 462 US 835 [upholding reapportionment plan where the total deviation from population equality was 89%]). As long as the defendants can demonstrate that the population inequalities are based on "legitimate considerations incident to the effectuation of a rational [county] policy", the plan will pass constitutional muster *(Reynolds v Sims, supra,* at 579). Moreover, local governments have been given greater discretion in creating legislative districts with population deviations, than

has been afforded the States in reapportioning their own Legislatures or congressional districts (see, *Abate v Mundt,* 25 NY2d 309, *affd* 403 US 182). Under these circumstances, the remaining plaintiffs have failed to show that they are likely to succeed on the merits of their equal protection claim. Thus, the Supreme Court properly refused to grant a preliminary injunction (see, *McLaughlin v Nolan,* 114 AD2d 165; *Matter of Schwartz v Rockefeller,* 38 AD2d 995). Mangano, P. J., Balletta, Eiber and Ritter, JJ., concur.