485 F.2d 1153
 Peter CUMMINGS, M.D., and Peter Rudd, M.D., Individually and
on behalf of all persons similarly situated,
Plaintiffs-Appellees,
v.
Robert E. HAMPTON, Chairman of United States Civil Service
Commission, et al., Defendants-Appellants.
 Nos. 72-2559, 72-3059.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 27, 1973.
 
 Garvin Lee Oliver (argued), A. William Olson, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., Robert L. Keuch, Dept. of Justice, Washington, D. C., for defendants-appellants.
 Malcolm Burstein (argued), Berkeley, Cal., for plaintiffs-appellees.
 Charles C. Marson, Joseph Remcho, Peter E. Sheehan, ACLU, San Francisco, Cal., for amicus curiae.
 Before BARNES, BROWNING and DUNIWAY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Physicians in residence at University Medical Center, Stanford, California, must serve several months of their reisdency at the Veterans Administration Hospital, Palo Alto, California. To qualify for the latter, they were required to complete Veterans Administration Form 10-2850-2, consisting of two questions:
 
 
 2
 1. Are you now or within the past ten years have you been a member of the Communist Party U.S.A., or any subdivision of the Communist Party U.S.A.?
 
 
 3
 2. Have you ever organized or helped to organize or become a member of any organization or group of persons which, during the period of your membership or association, you knew was advocating or teaching that the Government of the United States or of any State or political subdivision thereof should be overthrown or overturned by force, violence, or any other unlawful means?
 
 
 4
 The district court enjoined defendants-appellants from asking these questions of plaintiffs-appellees and other residency applicants, from requiring that they be answered as a condition of employment, and from refusing to employ a member of the plaintiff-appellee class because he failed to answer them.
 
 
 5
 The state may not subject a person to a civil disability for mere membership in a particular organization; at most, it may do so for membership in a subversive organization with knowledge of its unlawful purposes and specific intent to further those purposes. Baird v. State Bar of Arizona, 401 U.S. 1, 6, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); In re Stolar, 401 U.S. 23, 28, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971); Law Students Research Council v. Wadmond, 401 U.S. 154, 165, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971). "When a State seeks to inquire about an individual's beliefs and associations a heavy burden lies upon it to show that the inquiry is necessary to protect a legitimate state interest." Baird v. State Bar of Arizona, supra, 401 U.S. at 6-7, 91 S.Ct. at 706; Gibson v. Florida Legislative Committee, 372 U.S. 539, 546, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). However, "The Court has held that under some circumstances simple inquiry into present or past Communist Party membership of an applicant for admission to the Bar is not as such unconstitutional. Konigsberg v. State Bar, 366 U.S. 36 [81 S.Ct. 997, 6 L.Ed.2d 105]; In re Anastaplo, 366 U.S. 82 [81 S.Ct. 978, 6 L.Ed.2d 135]." Baird v. State Bar of Arizona, supra, 401 U.S. at 9, 91 S.Ct. at 707. (Justice Stewart concurring).
 
 
 6
 Hence, though broad inquiries into a person's beliefs or associations are disfavored because they discourage the exercise of First Amendment rights (Baird v. State Bar of Arizona, supra, 401 U.S. at 6, 91 S.Ct. 702; In re Stolar, supra, 401 U.S. at 30, 91 S.Ct 713) limited inquiries concerning Communist affiliation may be justifiable on the grounds of a legitimate state interest. Konigsberg v. State Bar, 366 U.S. 36, 46-47, 49-51, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).
 
 
 7
 The government in this case has shown no such legitimate state interest. Therefore, no inquiry not precisely tailored to ascertain whether prospective physicians have held knowing membership in an organization advocating the overthrow of the government by force or violence, and have shared the specific intent to further the organization's illegal goals, is warranted.
 
 
 8
 In the predecessor case to this one,* Judge Peckham observed that "the Government has not suggested any significant federal interest which would necessitate the inquiry undertaken by the Veterans Administration; and the record herein discloses no evidence to support such a governmental interest." Cummings v. Hampton, No. C-70 2130 (N.D.Cal. October 14, 1971). The same is true of the present record.
 
 
 9
 In Wadmond and Konigsberg the government relied upon an interest in limiting admission to the bar to persons who would be dedicated to the maintenance of the law and the peaceful resolution of disputes. Law Students Civil Rights Research Council v. Wadmond, supra, 401 U.S. at 166, 91 S.Ct. 720; Konigsberg v. State Bar, supra, 366 U.S. at 52, 81 S.Ct. 997. We can find no comparable government interest in physicians who will serve only a few months at a veterans' hospital to learn about the diseases of the medically poor as a part of their one-year residency or internship at a university medical center.
 
 
 10
 Such minimal interest as the government may have concerning these physicians' beliefs and associations must be balanced against the intrusion upon First Amendment rights engendered by the inquiries. Konigsberg v. State Bar, supra, 366 U.S. at 49-51, 81 S.Ct. 997. In Wadmond an applicant for admission to the bar faced a single, two-part inquiry. The applicant would know at once that the state's interest was not directed merely to membership, but to membership accompanied by a knowledge of illegal purpose and specific intent to further that purpose. In the present case, however, an applicant for residency faced with VA Form 10-2850-2 would know only that the questions were "preliminary." The nature of the inquiry that would follow an affirmative answer was not disclosed. If the applicant answered the two questions in Form 10-2850-2 in the negative, he would never see the assertedly limiting supplemental questions in Form 10-2850-1. Those questions could not ameliorate the "chilling" effect of the overly broad inquiries into his associations in Form 10-2850-2.
 
 
 11
 Justice Stewart's comment in Wadmond, supra, 401 U.S. at 165-166, 91 S. Ct. 720, that membership in the Communist Party is a proper subject of preliminary inquiry assumes that the applicant is made aware that no adverse consequences will be predicated upon membership without the requisite knowledge and intent. Thus, in Konigsberg, which Justice Stewart cites for the proposition, it was clear from colloquy between Konigsberg (and his counsel) and the chairman and a member of the committee of bar examiners, set out at 366 U.S. 46-47, 81 S.Ct. 997, the pages of Konigsberg cited by Justice Stewart, not only that the committee's question as to Communist Party membership was preliminary, but also that the committee would not base adverse action upon membership alone but only upon Konigsberg's knowledge of the purposes of the Party and activities he had undertaken to accomplish those purposes. The instructions accompanying VA Form 10-2850-2 are not so reassuring. They strongly suggest that knowing membership without specific intent to further the aims of the organization will be a factor considered; and they imply that membership alone may be an adverse factor in the employment decision.
 
 Here is what the instructions say:
 
 12
 An affirmative answer (YES) to either question does not in and of itself disqualify you for Government employment. These questions are only a preliminary inquiry, and if your answer to either question is "YES," you must obtain and complete VA Form 10-2850-1, Supplement to Application for Employment. Consideration will then be given to the nature of the organization, your knowledge of its aims and policy, the extent of your participation in the organization's activities, and any other relevant facts and circumstances. In any event, knowing membership in an organization of the type to which this question refers, along with the information furnished in VA Form 10-2850-1, will be only one of several factors considered in assessing your suitability for employment. (Emphasis added.)
 
 
 13
 Because the government has shown no legitimate interest which outweighs the chilling effect on the exercise of First Amendment rights caused by the questions in VA Form 10-2850-2, or which warrants inquiries beyond the scope of ascertaining the existence of constitutionally proscribable behavior, we find the questions in VA Form 10-2850-2 to be unconstitutionally broad. We do not reach any of the many other grounds upon which plaintiffs-appellees challenge the use of this form and Form 10-2850-1.
 
 
 14
 Affirmed.
 
 BARNES, Circuit Judge:
 
 15
 I respectfully dissent.
 
 
 16
 While the general statement of the law appearing in the third paragraph of the per curiam opinion is appropriate for the second question on Veterans Administration Form 10-2850-2, I cannot agree that it is appropriate for the first question. Question one is direct and precise. The government asks if the applicant is, or has recently been, a member of the Communist Party of the United States, or a subdivision thereof. It asks only if the applicant was a member of such Party, and not as to membership in any "other organization."
 
 
 17
 There is no threat of punishment for mere membership in the Communist Party.
 
 
 18
 In Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971), the Supreme Court required that questions directed to a state bar applicant concerning "expressive or associational activities" must ask more than mere membership. I cannot consider Baird, however, as applicable to an inquiry that goes no further than "the Communist Party, or a subdivision of the Communist Party," for that is controlled by Konigsberg v. State Bar, infra. Baird only applies to questions which go beyond question one, and which may suffer from over-breadth or vagueness. Similarly, question number 12 posted on the application for the Ohio bar was held to be invalid for the reasons stated in Baird. (In re Stolar, 401 U.S. 23, 30, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971)).
 
 
 19
 In Konigsberg v. State Bar, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961) the Supreme Court held that a State may inquire into a bar applicant's membership in the Communist Party under certain circumstances.
 
 
 20
 "As regards the questioning of public employees relative to Communist Party membership it has already been held that the interest in not subjecting speech and association to the deterrence of subsequent disclosure is outweighed by the State's interest in ascertaining the fitness of the employee for the post he holds, and hence that such questioning does not infringe constitutional protections. (Citations.)" Konigsberg, supra, 366 U. S. at 52, 81 S.Ct. at 1007. Accord, Baird, supra, 401 U.S. at 9, 91 S.Ct. 702 (Stewart, J., concurring); In re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961).
 
 
 21
 To be appropriate, the inquiry into Communist Party membership, as in question one, must be for a legitimate government purpose. In view of the position of trust and confidence which develops between patient and doctor, and in view of the position of authority which these doctors would have over government property, I conclude that the government has the requisite legitimate purpose necessary to pose question one.
 
 
 22
 If we assume that a requisite legitimate purpose exists for the government to determine if more than mere membership exists in a subversive organization, with knowledge of its unlawful purposes and a specific intent to further those purposes, how could there be any simpler or better method devised than to ask question one preliminarily to question two? There must be an acknowledgment, or proof, of membership as a sine qua non to any further questioning. Because a heavy burden may exist upon the state (in inquiring into and proving an individual's beliefs and associations), cannot mean question one is unnecessary; for if that be so, no question as to membership could be asked.
 
 
 23
 It does not satisfy me that the law as enunciated by the Supreme Court in Konigsberg, supra, Baird, supra, and Anastaplo, supra, has been followed, if this Court says that "a heavy burden lies upon the state", or that "broad inquiries are disfavored", and because of that, the one essential question cannot be asked.
 
 
 24
 With respect to question two, admittedly there is no reference to the applicant's intent. Standing alone, Law Students Research Council v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971), would require a decision that the question is in violation of the First Amendment. The question, however, does not stand alone: it is prefaced with instructions which appear at the top of the form. The proposed per curiam mentions this, but omits the thrust of the entire instructions. This is particularly evident by the statements appearing [in the eighth paragraph at page 4, lines 8-14]: "In the present case, however, an applicant for residency faced with VA Form 10-2850-2 would know only that the questions were 'preliminary.' The nature of the inquiry that would follow an affirmative answer was not disclosed." (Emphasis added.) My reading of the instructions contradicts such statements. After instructing an applicant (who answers affirmatively to either of the first two questions) (to obtain and complete the supplementary form, the instructions state: "Consideration will then be given to the nature of the organization, your knowledge of its aim and policy, the extent of your participation in the organization's activities, and any other relevant facts and circumstances." Therefore, the conclusion in the last sentences of paragraph eight that the "questions (in the supplemental form) could not ameliorate the 'chilling' effect of the overly broad inquiries into (the applicant's) associations," in questions one and two, does not, absent other grounds, convince me it is correct.
 
 
 25
 It is for these reasons that I dissent.
 
 
 
 *
 This case is a sequel to Cummings v. Hampton, No. C-70 2130 (N.D.Cal. October 14, 1971), in which the same plaintiffs successfully challenged the constitutionality of similar questions which they were required to answer as interns