413 F.Supp. 1177 (1976)
Stuart H. SHAPIRO, Plaintiff,
v.
Richard L. ROUDEBUSH, Administrator of the Veterans Administration of the United States, and Richard M. Ryan, Jr., Hospital Director of the Veterans Administration Hospital, West Roxbury, Massachusetts, Defendants.
No. CA 76-359-T.
United States District Court, D. Massachusetts.
April 30, 1976.
James S. Dittmar, Goodwin, Procter & Hoar, Boston, Mass., for plaintiff.
William A. Brown, Asst. U. S. Atty., Boston, Mass., for defendants.
*1178 TAURO, District Judge.
The plaintiff, Dr. Stuart Shapiro, a duly licensed physician, brings this action for declaratory and injunctive relief challenging the right of the government to inquire as to his beliefs and affiliations before permitting him to work as a resident in a Veterans Administration (VA) hospital.

I.
Plaintiff is licensed to practice medicine in Massachusetts, New York and California. He currently is a resident in the Joint Program in Nuclear Medicine sponsored by the Peter Bent Brigham Hospital and the Children's Hospital Medical Center, both in the Boston area. His residency entails medical practice and training in the field of nuclear medicine, a specialty within the field of radiology. The residency is for one year and is a prerequisite to the plaintiff's eligibility to take an examination for certification by the American Board of Nuclear Medicine. The Board's certification is essential to the plaintiff's professional advancement.
Pursuant to an agreement between the two sponsoring hospitals and the VA, the plaintiff is required to serve a three-month rotation as a resident in Nuclear Medicine at the VA Hospital in West Roxbury, Massachusetts. During this period, the plaintiff would be on the VA payroll, but would not receive permanent civil service status. His duties would consist of the performance of diagnostic procedures utilizing radio-pharmaceuticals, the interpretation of diagnostic studies and, on occasion, supervision of clinical technicians and nurses and the rendering of therapy. He would not have primary responsibility for any patient, nor would he have any administrative, personnel, budgetary or policy-making duties or responsibilities.
The plaintiff was scheduled to commence his residence at the VA Hospital on January 1, 1976. In September 1975, he received the appropriate application forms which included the following questionnaire:
 *1179
The plaintiff completed the application forms, except for the loyalty questionnaire. He returned the entire package of materials to the VA.
On December 31, 1975, the plaintiff received word that the loyalty questionnaire had to be completed and signed before he could begin his temporary employment at the VA Hospital. The plaintiff refused, but was able to arrange for a colleague to substitute for him at the VA Hospital during the month of January 1976.
On January 27, 1976, the plaintiff brought this action. A temporary restraining order was issued enjoining the defendants from refusing to permit the plaintiff to serve as a resident at the VA Hospital. Subsequently, the parties filed an agreed statement of facts and the matter was taken under advisement after a combined hearing on the preliminary injunction and the merits.

II.
This case exemplifies the continuing tension between those who object to government inquiry or intrusion into their beliefs and associations, and officials who have the responsibility for ensuring that sensitive government positions are not occupied by those who might intentionally harm the nation's welfare. See Baird v. State Bar of Arizona, 401 U.S. 1, 5-6, 91 S.Ct. 702, 705-706, 27 L.Ed.2d 639, 646-647 (1971). Compare Cole v. Richardson, 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 rev'g 300 F.Supp. 1321 (D.Mass.1969) with West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).
Generally speaking, the First Amendment guarantees the right of free association, and conversely prohibits government sanctions against a person because he is a member of a particular association or believes in its purposes. United *1180 States v. Robel, 389 U.S. 258, 266, 88 S.Ct. 419, 424, 19 L.Ed.2d 508, 515 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 607, 87 S.Ct. 675, 685, 17 L.Ed.2d 629, 643 (1967). As a corollary of this principle, the government is limited in its powers to inquire of a person as to his or her beliefs or associations. The rationale for this limitation is a recognition that to permit broad, sweeping or vague governmental inquiry in these areas could serve as an inhibiting influence on persons in their exercise of a fundamental right. Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); cf. Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).
But this limitation on governmental inquiry is not absolute. For example, the Supreme Court has recognized that the government has a legitimate interest in excluding from public employment, or as officers of its courts, those who are actively engaged in attempting to overthrow the government. And, by the same token, the Court has also held that a state may, in certain circumstances, make limited inquiry into Communist Party membership, if only as a first step in determining whether that membership is active. Law Students' Civil Rights Research Council v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

III.
The plaintiff contends that, applying these standards, questions 27 and 28(a) are unconstitutionally broad. Question 27 inquires only into an applicant's membership in the Communist Party and 28(a) inquires as to membership in any organization "which . . . you knew was advocating" the forcible or unlawful overthrow of government authority. Plaintiff's theory is that these questions inquire only as to mere membership in an organization which may have as its purpose the overthrow of the government, as opposed to whether the applicant has the specific intent to further the organization's purpose. The plaintiff argues that to refuse him employment for not answering these questions amounts to imposition of de facto punishment simply because he may be a member of a particular organization, something the Court has consistently held the First Amendment prohibits. See, e. g., Elfbrandt v. Russell, 384 U.S. 11, 17, 86 S.Ct. 1238, 1241, 16 L.Ed.2d 321, 325 (1966); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).
The government, on the other hand, argues that questions 27 and 28(a) cannot be viewed in isolation. Its theory is that these questions are only preliminary to questions 28(b) and 28(c), which are designed to more clearly reveal an applicant's intent and the scope of his participation in organizations which may be advocating or teaching the violent or unlawful overthrow of the government. Viewed in its entirety, the government contends this questionnaire is a legitimate inquiry, carefully tailored to meet First Amendment requirements.
In support of its position, the government cites Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971). There, the Court rejected a First Amendment challenge to questions similar to 27 and 28(a) which were posed to prospective applicants to the New York Bar. The Court held that preliminary inquiry into a bar applicant's membership in the Communist Party was permissible, solely as a first step in determining the nature and extent of his participation in party activities. Fundamental to the Court's holding in that case, however, was its recognition that New York was justified in making such a broad-based "preliminary inquiry" to determine the character "of an applicant for admission to a profession dedicated to the peaceful and reasoned settlement of disputes between men, and between a man and his government." 401 U.S. at 166, 91 S.Ct. at 728, 27 L.Ed.2d at 760.
In the instant case there is no such overriding governmental interest. The plaintiff is not embarking on a lifetime of government service, but is only serving a temporary stint in a VA Hospital for the *1181 purpose of completing his private residency program. He has no policy-making or administrative position, in either the agency or the hospital in which he seeks to work. And there is no indication that his political associations, let alone his beliefs, will have any effect whatsoever on his ability or willingness to meet his professional and ethical responsibilities for the care and treatment of patients with whom he will come into contact.
Moreover, as the Ninth Circuit has pointed out in a similar context, the Court's language in Wadmond providing that mere membership in the Communist Party is a proper subject of preliminary inquiry, assumes that the applicant is made aware that no adverse consequences will be predicated on membership alone. In support of the proposition that such preliminary inquiry is proper, the Wadmond Court cited Konigsberg v. State Bar, 366 U.S. 36 (1961), specifically pages 46 and 47, 81 S.Ct. 997, pages 1004 and 1005, 6 L.Ed.2d 105, pages 114 and 115. Those pages reveal a colloquy between a bar applicant, his counsel and a bar examining committee in which the Committee indicates that Konigsberg would not be rejected for admission to the bar merely because he might be found to be a member of the Communist Party, but only after the Committee made an evaluation of Konigsberg's knowledge of the organization's purposes and his intent to pursue them.
There is no indication in the instant case that the VA has any such carefully evolved procedure. Neither the instructions nor the actual questions contain any warning to applicants that an affirmative answer to either question 27 or 28(a) will not in and of itself disqualify that applicant for government employment. Nor is there any basis in the record for assuming that an individual who answers questions 27 and 28(a), affirmatively, but 28(b) or 28(c) negatively, will still be able to enter into government service. Indeed, in a predecessor to the questionnaire under attack here, the government represented that such answers would not automatically disqualify an applicant. See Cummings v. Hampton, 485 F.2d 1153, 1155 (9th Cir. 1973).[*]
A further and fatal flaw in this questionnaire is the very thrust of its inquiry. Question 28(a) requires the applicant to indicate whether he knowingly was a member of an organization which was "advocating or teaching" the unlawful or violent overthrow of the government. Question 28(b) then incorporates 28(a) by reference and inquires whether the applicant had ever joined that organization "with the specific intent to further [its] aims," thereby adding an element of scienter. Question 28(c) then provides the mechanical *1182 step of listing those organizations. Such inquiry, focusing as it does on advocacy as opposed to activity, is constitutionally impermissible.
In Communist Party of Indiana v. Whitcomb, 414 U.S. 441, 94 S.Ct. 656, 38 L.Ed.2d 635 (1974), a decision which followed Wadmond, the Court dealt with a loyalty qualification required of candidates for office in Indiana. In striking down the questions at issue in that case, the Court reaffirmed the settled distinction between mere advocacy of abstract ideas and advocacy directed toward inciting action. As the Court pointed out, in quoting its earlier decision in Brandenburg v. Ohio, 395 U.S. 444, 447-48, 89 S.Ct. 1827, 1829-1830, 23 L.Ed.2d 430, 433-434 (1969):
"[L]ater decisions have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. As we said in Noto v. United States, 367 U.S. 290, 297-298 [81 S.Ct. 1517, 1520-1521, 6 L.Ed.2d 836] (1961), `the mere abstract teaching . . . of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.' . . . A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments. It sweeps within its condemnation speech which our Constitution has immunized from governmental control. Cf. Yates v. United States, 354 U.S. 298 [77 S.Ct. 1064, 1 L.Ed.2d 1356] (1957) . . .."
414 U.S. at 448, 94 S.Ct. at 661, 38 L.Ed.2d at 642.
The Court then went on to note that:
"[t]his principle . . . has been applied not only to statutes that directly forbid or proscribe advocacy, see Scales v. United States, 367 U.S. 203 [81 S.Ct. 1469, 6 L.Ed.2d 782] (1961); Noto v. United States, 367 U.S. 290 [81 S.Ct. 1517, 6 L.Ed.2d 836 (1961)]; Yates v. United States, 354 U.S. 298 [77 S.Ct. 1064, 1 L.Ed.2d 1356] (1957); but also to regulatory schemes that determine eligibility for public employment, Keyishian v. Board of Regents, 385 U.S. 589 [87 S.Ct. 675, 17 L.Ed.2d 629] (1967); Elfbrandt v. Russell, 384 U.S. 11 [86 S.Ct. 1238, 16 L.Ed.2d 321] (1966); Cramp v. Board of Public Instruction, 368 U.S. 278 [82 S.Ct. 275, 7 L.Ed.2d 285] (1961); see also United States v. Robel, 389 U.S. 258 [88 S.Ct. 419, 19 L.Ed.2d 508] (1967); tax exemptions, Speiser v. Randall, 357 U.S. 513 [78 S.Ct. 1332, 2 L.Ed.2d 1460] (1958); and moral fitness justifying disbarment, Schware v. Board of Bar Examiners, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed.2d 796] (1957)."
414 U.S. at 448-49, 94 S.Ct. at 661-662, 38 L.Ed.2d at 642. See generally Note Vagueness Standard Relaxed for "Affirmative Oaths," 58 Cornell.L.Rev. 383-86 ns. 4-7 (1973).
In the instant case, the questionnaire is not limited to meet the proscriptions of Whitcomb. Question 28(b) does add the element of scienter to the "preliminary inquiry" provided in questions 27 and 28(a). But the thrust of its inquiry is confined to whether the applicant had the "specific intent" to further the teaching or advocacy of the overthrow of the government. Neither singly nor in combination do these questions make the distinction required by Whitcomb and Brandenberg, between advocacy and activity "directed to inciting or producing imminent lawless action and [which] is likely to incite or produce such action." 414 U.S. at 448, 94 S.Ct. at 661, 38 L.Ed.2d at 642.
The challenged questionnaire is a constitutionally impermissible intrusion upon the plaintiff's rights of free association and free speech. Accordingly, this court holds that the First Amendment prohibits the government from requiring the plaintiff to complete the loyalty questionnaire at issue in this case as a condition precedent to his *1183 serving a four month residency in Nuclear Medicine in the Veterans Administration Hospital.
NOTES
[*] The questions at issue in Cummings were similar to questions 27 and 28(a) in the instant case. They were preceded by the following instructions:

An affirmative answer (YES) to either question does not in and of itself disqualify you for Government employment. These questions are only a preliminary inquiry, and if your answer to either question is "YES," you must obtain and complete VA Form 10-2850 1, Supplement to Application for Employment. Consideration will then be given to the nature of the organization, your knowledge of its aims and policy, the extent of your participation in the organization's activities, and any other relevant facts and circumstances. In any event, knowing membership in an organization of the type to which this question refers, along with the information furnished in VA Form XX-XXXX-X, will be only one of several factors considered in assessing your suitability for employment. (Emphasis added.)
The court found these instructions insufficient in part because they did not go far enough in alerting the applicant that a positive answer to a preliminary inquiry on mere membership in a particular organization was not a proper basis for the Veterans Administration refusing to hire him. Cummings v. Hampton, supra, 485 F.2d at 1155-56. Seemingly, in response to Cummings, the Veterans Administration merely eliminated the instructions. See also Obeler v. Hampton, C-74-2265-OJC (N.D.Cal. August 4, 1975).
In the instant case, the only information given the applicant, in addition to the instructions cited in the text, is a warning that false answers to these questions may subject an applicant to prosecution, and that "all statements are subject to investigation, including a check of your fingerprints, and former employers." Appendix to Agreed Statement of Facts.