156 F.3d 292
 UNITED STATES of America, Appellee,
v.
Norman WESLIN, Dwight Monagan, Barton Chamberlin, Arnold
Matheson, John Blanchard, Michael Illuzzi, Karen Jackson,
Daniel Lamontain-Leatherman, Robert Raco, Randolph Smith,
and Rene Riddle, Defendants-Appellants.
 Docket Nos. 97-1348, 97-1349, 97-1350, 97-1352, 97-1353,
97-1354, 97-1355, 97-1356, 97-1357, 97-1358,
97-1359 and 97-1653.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 12, 1998.
Decided Aug. 25, 1998.
 
 Louis E. Peraertz, Department of Justice, Washington, DC, for Appellee.
 Gabriel P. Kralik, Fish & Richardson, P.C., New York City, for Defendants-Appellants.
 Before: CALABRESI, CABRANES, and STRAUB, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants appeal from a judgment of the United States District Court for the Western District of New York (Larimer, C.J.), convicting them, after a bench trial, of violating the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248. The violation occurred on December 7, 1996, when the defendants blockaded a Planned Parenthood clinic. The court ordered the defendants to pay restitution for property damage they had caused and sentenced them to terms ranging from time served plus supervised release to four months' imprisonment. On appeal, the defendants assert (1) that FACE is unconstitutional because Congress lacked the power to enact it under the Commerce Clause; (2) that FACE violates their rights under the Free Speech Clause of the First Amendment; and (3) that they lacked the requisite intent to be found guilty under FACE. We hold that FACE is constitutional, and we affirm the district court in all respects.
 
 BACKGROUND
 
 2
 The defendants are members of an anti-abortion group called Lambs of Christ. On December 7, 1996, the defendants engaged in a sit-in protest at a Planned Parenthood clinic in Rochester, New York, physically blocking all five entrances to the clinic. Some of the protestors locked or welded themselves to large objects (in one case a car, in another case a picnic table) immediately in front of clinic entrances. Others chained themselves together in front of doors or attached themselves directly to door handles. There is no allegation that the defendants engaged in violence, but they refused to leave when asked and "passively resisted" when they were then forcibly removed by local police and fire authorities. The obstructions of the clinic entrances caused property damage in the amount of eleven hundred dollars and fifty-seven cents. The defendants stated at the time of the protest, and again at trial, that they undertook their actions "to prevent the killing of babies."
 
 
 3
 The defendants were charged with violating the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248.[1] On April 4, 1997, defendant Weslin moved to have the criminal action dismissed. He argued that FACE exceeds Congress's power under the Commerce Clause and that FACE is invalid under the Free Speech and Free Exercise Clauses of the First Amendment as well as under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb to 2000bb-4. On May 6, 1997, the district court denied the motion in all respects. On June 9, 1997, Chief Judge Larimer conducted a bench trial, which included an examination of the defendants, of stipulated government testimony, and of a videotape of the events of December 7. He found all the defendants guilty and imposed a variety of sentences in accordance with the statute. The court also required the defendants to pay restitution for the property damage they had caused.
 
 
 4
 On appeal, the defendants no longer assert claims under RFRA or the Free Exercise Clause; their challenges to FACE rest on the Free Speech Clause and the Commerce Clause.
 
 DISCUSSION
 I. The constitutionality of FACE
 
 5
 Several of our sister circuits have considered constitutional challenges to FACE, and all of them have found the statute to be constitutional. See United States v. Wilson, 154 F.3d 658 (7th Cir.1998); United States v. Bird, 124 F.3d 667 (5th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1189, 140 L.Ed.2d 320 (1998); Hoffman v. Hunt, 126 F.3d 575 (4th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1838, 140 L.Ed.2d 1089 (1998); Terry v. Reno, 101 F.3d 1412 (D.C.Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1996); United States v. Soderna, 82 F.3d 1370 (7th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 507, 136 L.Ed.2d 398 (1996); United States v. Dinwiddie, 76 F.3d 913 (8th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 613, 136 L.Ed.2d 538 (1996); Cheffer v. Reno, 55 F.3d 1517 (11th Cir.1995). We agree, and we have little to add to their analyses.A. Congress's power to enact the statute
 
 
 6
 FACE is a valid exercise of Congress's power under the Commerce Clause. Under United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Congress can use its commerce power to regulate three categories of activity. Congress may regulate (1) the channels of interstate commerce; (2) the "instrumentalities" of interstate commerce, or persons or things in interstate commerce; (3) activities having a "substantial relation" to, or which "substantially affect," interstate commerce. Lopez, 514 U.S. at 558-59, 115 S.Ct. 1624. FACE is valid under (3).
 
 
 7
 When Congress enacts a statute on the theory that the activity regulated substantially affects interstate commerce, the scope of judicial review is limited to the question of whether Congress had a rational basis for reaching that conclusion. See, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n., 452 U.S. 264, 276-80, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). In Lopez, the Supreme Court noted the absence of specific congressional findings that the Gun Free School Zones Act regulated activities substantially affecting interstate commerce. Lopez, 514 U.S. at 562, 115 S.Ct. 1624. In contrast, Congress specifically found that the activities governed by FACE affect interstate commerce. The legislative history of FACE shows that Congress specifically found that "women travel interstate to obtain reproductive health services." H.R.Rep. No. 103-306 at 6 (1993), U.S. Code Cong. & Admin. News at 699, 703. See also id. at 8 (describing a woman who had to travel from Virginia to Kansas to obtain the particular procedure she required). Similarly, and in part because of a shortage of doctors willing to perform abortions, doctors travel from state to state and often cover great distances to perform abortions. See S.Rep. No. 103-117 at 31 & n. 46 (1993) (quoted in Terry, 101 F.3d at 1416) (D.C.Cir.1996). Congress also found that clinics purchase medical and other supplies in interstate commerce. S.Rep. No. 103-117 at 31 (quoted in Terry, 101 F.3d at 1415-16).
 
 
 8
 Congress may regulate to prevent the inhibition or diminution of interstate commerce. See Katzenbach v. McClung, 379 U.S. 294, 299-300, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). This is so even when the activity controlled is not itself commercial. Thus, the Supreme Court has held (in another case involving harassment at abortion clinics) that threats of violence that have the effect of deterring commercial activity are within the ambit of RICO, even though the threats are made for non-commercial purposes. See National Org. for Women v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). RICO, like FACE, is a statute enacted under the Commerce Clause.
 
 
 9
 Because FACE could be validly enacted under the Commerce Clause, it does not matter whether Congress's motive in enacting the statute was commercial, noncommercial, or mixed. For Congress may regulate interstate commerce for any purpose not affirmatively forbidden by the Constitution. See Heart of Atlanta Motel, Inc., v. United States, 379 U.S. 241, 256-57, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (describing variety of noncommercial purposes for which Congress may regulate interstate commerce); United States v. Von Foelkel, 136 F.3d 339, 341 (2d Cir.1998) (per curiam ) (upholding a provision of the Violence Against Women Act, 18 U.S.C. 2262(a)(1), against a Commerce Clause challenge that was based on the non-commercial nature of the provision).
 
 B. Free Speech
 
 10
 1. FACE is not a viewpoint- or content-based regulation. The defendants claim that FACE discriminates among forms of expression on the basis of content and viewpoint. Specifically, they claim that FACE regulates the expression only of people who are ideologically or morally opposed to abortion and to similar reproductive health services. We disagree. Both by its language and its application, FACE seeks to govern all people who obstruct the provision of reproductive health services. And it does so regardless of whether the obstruction is or is not motivated by opposition to abortion.
 
 
 11
 Thus, "pro-choice" protestors as well as "pro-life" protestors come within the terms of the statute. It applies to those who would interfere with the provision of counseling at a clinic in which patients are encouraged not to have abortions. Not only are such persons subject to prosecution in theory, but at least one pro-choice activist has, in fact, been prosecuted for violating FACE. See United States v. Mathison, CR-95-085-FVS (E.D.Wa.1995) (defendant prosecuted for threatening workers at pro-life facilities).
 
 
 12
 Moreover, FACE does not discriminate on the basis of content. The defendants rightly point out that the First Amendment looks with great skepticism not just on laws that prohibit people from expressing a given point of view but also on laws that restrict which issues can be discussed. See Police Dep't of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (striking down ordinance that banned most demonstrations near schools but permitted demonstrations involving labor issues). Here, however, there is no discrimination of this sort.
 
 
 13
 Contrary to the defendants' assertion, FACE prohibits obstruction of reproductive health clinics regardless of the issue that animates the demonstrators. Thus, FACE applies whenever access to reproductive health services is obstructed. It contains no requirement whatsoever that the offenders intend to communicate a particular message--or any message at all--by their obstructive actions. As the Eighth Circuit put it, "FACE would prohibit striking employees from obstructing access to a clinic in order to stop women from getting abortions, even if the workers were carrying signs that said, 'We are underpaid!' rather than 'Abortion is wrong!' " Dinwiddie, 76 F.3d at 923.
 
 
 14
 It is irrelevant whether, in practice, most of those prosecuted under FACE are anti-abortion protestors. First Amendment law does not recognize disparate impact claims. Id. And "[a] group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." Soderna, 82 F.3d at 1376. See also Madsen v. Women's Health Center, Inc., 512 U.S. 753, 762-63, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (same).
 
 
 15
 2. Speech and Conduct. The defendants argue that the state may not restrict conduct based on the message the conduct expresses, and they urge an analysis based on R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (striking down a "Bias-Motivated Crime Ordinance"). This line of reasoning is not in point. The law in R.A.V. dealt with pure speech and discriminated on the basis of viewpoint as well. FACE, which in any case is viewpoint-neutral, does not govern speech as such but, instead, is concerned with conduct that frequently has expressive components.
 
 
 16
 The distinction between regulating speech and regulating conduct that has expressive components is fundamental. It is why government can validly prohibit a range of activities ranging from secondary boycotts, see International Longshoremen's Ass'n. v. Allied Int'l, 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982), through public nudity, see Barnes v. Glen Theatre, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), to political assassinations, see Tribe, American Constitutional Law 828 n. 18 (2d ed.1988) (cited in Soderna, 82 F.3d at 1374-75). It would be wrong to say that those activities are not or cannot be forms of expression. But the fact that they have expressive aspects does not exempt them from governmental prohibition.
 
 
 17
 The constitutionality of laws that burden expression while restricting proscribable conduct is determined by the criteria laid down in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). O'Brien establishes a three-prong test: (i) the regulation must serve an important or substantial governmental interest; (ii) the interest must be unrelated to the suppression of expression; (iii) the incidental restriction of First Amendment freedoms must be narrowly tailored to that interest. O'Brien, 391 U.S. at 377, 88 S.Ct. 1673. We consider the three prongs in turn.
 
 
 18
 First, the Supreme Court has held that the government's interests in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services" are, in combination, sufficient to support an injunction against pro-life protestors. Schenck v. Pro-Choice Network, 519 U.S. 357, 117 S.Ct. 855, 866, 137 L.Ed.2d 1 (1997). Given that the standard for injunctions is stricter than the standard for statutes, see Madsen, 512 U.S. at 764-65, 114 S.Ct. 2516, the same interests are sufficient to support FACE. Second, those interests are unrelated to the suppression of free expression. They are compatible with non-obstructive, non-destructive demonstrations near reproductive health clinics. And the legitimate governmental objectives of FACE will clearly be satisfied regardless of whether such unprohibited demonstrations occur and convey messages of opposition to abortion. Third, FACE is narrowly tailored. It leaves anti-abortion protestors and all other persons wishing to exercise free speech rights under the First Amendment at liberty to hold signs, pass out handbills, speak conversationally, and so forth, anywhere and anytime they choose. FACE is therefore valid under O'Brien.
 
 II. Mens Rea
 
 19
 The defendants claim that they did not have the requisite intent to violate FACE. Their object was different: to save the lives of unborn children. The defendants cannot, however, avoid conviction by characterizing their motive in this manner. No matter what their ultimate purpose in blockading the clinic may have been, the defendants do not deny--nor could they plausibly deny--that they meant to block the entrances to the Planned Parenthood clinic on December 7 and that they did so because they wished to prevent the clinic from performing abortions. Congress has expressly defined "reproductive health services" to include "services relating to ... the termination of a pregnancy," 18 U.S.C. § 248(e)(5). It follows that the defendants, whatever their motive may have been, did intend to obstruct and interfere with the obtaining and provision of reproductive health services as defined by Congress. That is all the intent that the statute requires.
 
 
 20
 The defendants also argue that FACE is a civil rights statute and that they cannot be guilty under its provisions because their actions were non-discriminatory. Defendants err in their premise. FACE is a criminal statute and discrimination is not one of its elements. Whether the defendants acted in a discriminatory fashion or not is irrelevant to their guilt.
 
 CONCLUSION
 
 21
 We have carefully considered all of the defendants' arguments on appeal.[2] For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 18 U.S.C. § 248 reads, in relevant part:
 (a) Prohibited activities.--Whoever--
 (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services;
 ...
 (3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services ...
 shall be subject to the penalties provided....
 (d) Rules of Construction.--Nothing in this section shall be construed--
 (1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution....
 (e) Definitions.--As used in this section:
 ...
 (2) Interfere with.--The term "interfere with" means to restrict a person's freedom of movement.
 ...
 (4) Physical obstruction.--The term "physical obstruction" means rendering impassable ingress to or egress from a facility that provides reproductive health services ... or rendering passage to or from such a facility ... unreasonably difficult or hazardous.
 (5) Reproductive health services.--The term "reproductive health services" means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.
 
 
 [2]
 In addition to the claims discussed above, the defendants appeal the district court's refusal to sanction the court reporter for not making certain requested changes in the trial transcript. Like the district court, we view this claim as without merit