POOLER, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s conclusion relating to the sufficiency of the evidence, because I find that, as a *430 matter of law, Turner’s speech was not a true threat under 18 U.S.C. § 115(a)(1)(B) and the First Amendment.
Section 115(a)(1)(B), as it “makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind.” Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Although vast, “[t]he protections afforded by the First Amendment ... are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution.” Virginia v. Black, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); see also Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Relevant to this case are two such categories, “true threats,” see Watts, 394 U.S. at 708, 89 S.Ct. 1399, and “incitement,” see Brandenburg v. Ohio, 395 U.S. 444, 449, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).
When evaluating speech that is purported to lie outside of constitutional protection, we must take care in drawing the boundaries of these categories. “In defining these limited enclaves of unprotected speech, ... we have taken great pains to preserve ample breathing space in which expression may flourish.” Thomas v. Bd. of Educ., Granville Cent. Sch. Dist., 607 F.2d 1043, 1048 (2d Cir.1979). The true threats category distinguishes true threats from purported threats that are mere “political hyperbole,” even if “vituperative, abusive, and inexact.” Watts, 394 U.S. at 708, 89 S.Ct. 1399. Similarly, the incitement category distinguishes incitement from the “advocacy of the use of force or of law violation.” Brandenburg, 395 U.S. at 447, 89 S.Ct. 1827. To distinguish true threats from political hyperbole, we use an objective test, “namely, whether an ordinary, reasonable recipient who is familiar with the context of the communication would interpret it as a threat of injury.” Majority Op. at 420 (quoting United States v. Davila, 461 F.3d 298, 305 (2d Cir.2006)) (internal quotation marks omitted). For example, “[ijntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.” Black, 538 U.S. at 360, 123 S.Ct. 1536. To distinguish incitement from advocacy, we look to whether the communication “is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.” Brandenburg, 395 U.S. at 447, 89 S.Ct. 1827; see also Hess v. Indiana, 414 U.S. 105, 108-09, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (finding no incitement where the “statement was not directed to any person or group of persons”).
In sum, our First Amendment analysis has true threats and incitement as two categories of unprotected speech, under which we distinguish, respectively, true threats from purported threats and incitement from purported incitement or advocacy. At issue in this case is the initial question of the category under which the speech falls. A given communication may be neither incitement nor a true threat, one or the other, or arguably even both. But before reaching any of these conclusions, we must first determine, as a matter of law, which category we are in, and whether we have an “incitement” case or a “true threats” case. Only then can we determine whether the speech at issue is protected under the appropriate legal test.
In many cases, this initial question is not explicitly addressed, because the form of speech makes clear that the case is either an “incitement” case or a “true threats” case. Regardless, it is undeniable that *431 courts treat purported threats and advocacy as distinct. See Fogel v. Collins, 531 F.3d 824, 830 (9th Cir.2008); Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists, 290 F.3d 1058, 1072 (9th Cir.2002) (“Planned Parenthood II”); United States v. Howell, 719 F.2d 1258, 1260 (5th Cir.1983). We must make an initial determination of the category of speech under which our analysis lies because “the constitutional question turns on the source of the[ ] fear.” Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists, 244 F.3d 1007, 1018 (9th Cir.2001) (“Planned Parenthood I”), rev’d en banc, 290 F.3d 1058 (9th Cir.2002). Application of the “true threats” test presupposes that the speech at issue is a purported threat and only evaluates its seriousness. See Black, 538 U.S. at 360, 123 S.Ct. 1536 (stating that speech is a true threat if “a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death,” which presumes that the communication is in form a threat). Thus, our “true threats” analysis looks to “whether an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury,” or if the communication, while in form a threat, is constitutionally-protected political hyperbole. Davila, 461 F.3d at 305. A different analysis is needed to distinguish purported threats from other categories of speech.
Furthermore, in determining whether speech is a purported threat, we must make sure that the speech is not instead advocacy protected by Brandenburg. Brandenburg (incitement) and Watts (true threats), and their respective progeny, offer different Constitutional protections, and those afforded to advocacy would have less force if we analyzed all speech under the “true threats” test. Advocacy of the use of force, even if not incitement under Brandenburg, will often place the object of the advocacy “in fear of bodily harm or death,” which would be “constitutionally proscribable” intimidation under Black. 538 U.S. at 360, 123 S.Ct. 1536. Much of what is said by even nonviolent advocates can “aequire[ ] the tinge of menace.” Planned Parenthood I, 244 F.3d at 1014. “[Hjowever, that mere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment.” NAACP v. Claiborne Hardware Co., 458 U.S. 886, 927, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). “Speech does not lose its protected character ... simply because it may embarrass others or coerce them into action.” Id. at 910, 102 S.Ct. 3409. For this to be true, we must distinguish between threats and other forms of speech that may intimidate, menace, or coerce but are protected (unless they fall into another category of regulated speech). Political advocacy must be a form of speech that stands outside the true threats analysis.
While “the line between the two forms of speech may be difficult to draw in some instances,” Howell, 719 F.2d at 1260, case law establishes principles to distinguish between threats and other forms of speech. First, with respect to the true threats category, “a court must be sure that the recipient is fearful of the execution of the threat by the speaker (or the speaker’s co-conspirators).”[1] New York *432 ex rel. Spitzer v. Operation Rescue Nat'l, 273 F.3d 184, 196 (2d Cir.2001). “Thus, generally, a person who informs someone that he or she is in danger from a third party has not made a threat, even if the statement produces fear. This may be true even where a protestor tells the objects of protest that they are in danger and further indicates political support for the violent third parties.” Id. In other words, a threat “warns of violence or other harm that the speaker controls.” Planned Parenthood II, 290 F.3d at 1089 (Kozinski, /., dissenting). In contrast, the incitement category involves “predictions or exhortations to others” to use violence. See United States v. Bagdasarian, 652 F.3d 1113, 1119 (9th Cir.2011). Drawing this distinction will necessarily lead us to the syntax of the communication at issue: “I will Mil you” suggests danger from the speaker, while, “you deserve to die” suggests a prediction or exhortation. However, “rigid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render the statute powerless against the ingenuity of threateners who can instill in the victim’s mind as clear an apprehension of impending injury by an implied menace as by a literal threat.” Majority Op. at 422 (quoting United States v. Malik, 16 F.3d 45, 50 (2d Cir.1994)) (internal quotation marks omitted). Threats do not have to be “explicit [or] conveyed with the grammatical precision of an Oxford don.” Majority Op. at 425. “An absence of explicitly threatening language does not preclude the finding of a threat.”[2] Malik, 16 F.3d at 49 (discussing 18 U.S.C. § 876). Speech may be ambiguous as to who will cause injury and still constitute a threat.
As a second principle, a purported threat must be directed toward the victim. See Operation Rescue Natl, 273 F.3d at 196. “In most cases where courts have found that speech constituted a true threat, the threatening speech was targeted against specific individuals or was communicated directly to the subject of the threat.” Fogel, 531 F.3d at 830. Purported incitement, on the other hand, is directed toward third parties. See Bagdasarian, 652 F.3d at 1119 (describing advocacy as “predictions or exhortations to others ”) (emphasis added).
To the extent that speech is ambiguous, the distinction between “public discourse” *433 and “direct personal communications” is “highly significant.” See Planned Parenthood I, 244 F.3d at 1018; see also Claiborne Hardware, 458 U.S. at 926-27, 102 S.Ct. 3409 (“Since respondents would impose liability on the basis of a public address — which predominantly contained highly charged political rhetoric lying at the core of the First Amendment — we approach this suggested basis of liability with extreme care.”). “Political speech, ugly or frightening as it may sometimes be, lies at the heart of our democratic process.” Planned Parenthood II, 290 F.3d at 1089 (Reinhardt, J., dissenting); see also Boos v. Barry, 485 U.S. 312, 322, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (“As a general matter, we have indicated, that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment.”) (internal quotation marks omitted). “Private threats delivered one-on-one do not.” Planned Parenthood II, 290 F.3d at 1089 (Reinhardt, /., dissenting) (emphasis added). We have often found ambiguous speech to be a true threat when conveyed in private communication. In Malik the defendant sent two letters with “[a]rguably ... ambiguous” threats, and we affirmed the jury’s finding that the letters were true threats. 16 F.3d at 50. In United States v. Shoulberg the defendant passed a note to a co-conspirator that “carried overtones of imminent threat” toward a third person. 895 F.2d 882, 886 (2d Cir.1990). In United States v. White, 670 F.3d 498, 512 (4th Cir.2012), the defendant sent an email comparing the recipient to Judge Lefkow — similar to Turner’s invocation of Judge Lefkow in this case — and the Fourth Circuit affirmed the threat conviction under Watts. Majority Op. at 421-22. In all of these cases, courts found true threats despite the “absence of explicitly threatening language,” Malik, 16 F.3d at 49. Unlike the present case, these cases all involved personal communications.
In contrast, the Supreme Court has held that even language that seems threatening may, if made in public as part of political communications, fall under the incitement category. In Claiborne Hardware, speaker Charles Evers, as organizer of a civil-rights boycott, spoke out against boycott breakers during several public rallies. 458 U.S. at 902, 102 S.Ct. 3409. At one rally, he stated that boycott breakers would be “disciplined”; at another he said: “If we catch any of you going in any of them racist stores, we’re gonna break your damn neck.” Id. The Supreme Court acknowledged that Evers public statements “might have been understood as inviting an unlawful form of discipline or, at least, as intending to create a fear of violence.” Id. at 927, 102 S.Ct. 3409. Nevertheless, it analyzed under Brandenburg and held that Ever’s statements were constitutionally-protected advocacy. Id. at 927-29, 102 S.Ct. 3409.
I do not wish to imply that a public statement can never be a true threat. In United States v. Kelner, we found a true threat where the speaker said, in an interview later broadcast on television, “[w]e are planning to assassinate Mr. Arafat.... Everything is planned in detail.” 534 F.2d 1020, 1025 (2d Cir.1976). While the majority correctly notes that the Kelner Court’s threat test is dicta and that our standard is broader, Majority Op. at 423-24, it is notable that the Kelner Court found that the speech at issue was an “unequivocal, unconditional and specific expression[ ] of intention immediately to inflict injury.” 534 F.2d at 1027. That is to say, when speech is unambiguously directed toward a victim, we need not look to the distinction between public and personal communications. It is in the face of ambiguity that this distinction is “highly significant.” *434 Planned Parenthood I, 244 F.3d at 1018. Nor do I wish to imply that a statement cannot arguably be both a purported threat and advocacy. Speech may threaten violence that the speaker controls and exhort others to act, directing the speech to both the victim and third parties. But to the extent that the speech in question is a public address, we must “approach ... with extreme care.” Claiborne Hardware, 458 U.S. at 927, 102 S.Ct. 3409. A public statement of advocacy must be clearly in the form of a threat for us to apply the “true threats” test. Holding otherwise would insufficiently protect public discourse.
Turning to the case at hand, I would hold that Turner’s communications were advocacy of the use of force and not a threat. It is clear that Turner wished for the deaths of Judges Easterbrook, Posner, and Bauer. Majority Op. at 414-16. But I read his statements, made in the passive voice, see id. at 422, as an exhortation toward “free men willing to walk up to them and kill them” and not as a warning of planned violence directed toward the intended victims, id. at 414-15. This reading is furthered by the fact that Turner’s words were posted on a blog on a publicly accessible website, id. at 414, 416, and had the trappings of political discourse, invoking Thomas Jefferson’s famous quotation that “[t]he tree of liberty must be replenished from time to time with the blood of tyrants and patriots,” id. at 415. Although vituperative, there is no doubt that this was public political discourse. His speech might be subject to a different interpretation if, for example, the statements were sent to the Judges in a letter or email. See Malik, 16 F.3d at 50. However, Turner’s public statements of political disagreement are different from a threat.
Finding that the communications were advocacy and not a threat, I dissent from the majority’s opinion and find that the evidence was not “sufficient to permit a reasonable jury to find that Turner’s conduct constituted a threat.” Majority Op. at 419 (quoting Davila, 461 F.3d at 305) (internal alterations omitted). If Turner’s statements were in form a threat, I would not disagree with the majority’s holding that the test to distinguish true threats from political hyperbole is an objective one, Majority Op. at 420; that a determination of whether Turner’s speech is a true threat under this test is an issue of fact for a jury, id. at 419; that the district court’s jury instruction in this case was proper, id. at 425-26; and that Turner’s statements “reveal[ ] a gravity readily distinguishable from mere hyperbole or common public discourse,” id. at 421. However, I do not believe that Turner’s statements, although abhorrent, amount to a threat. The distinction between advocacy and threats does not turn on the gravity of speech.
From this discussion of the Constitution, I turn to the statute under which Turner was charged, Section 115(a)(1)(B), which “must be interpreted with the commands of the First Amendment clearly in mind.” Watts, 394 U.S. at 707, 89 S.Ct. 1399. Section 115(a)(1)(B) makes it a crime to “threaten! ] to assault, kidnap, or murder ... a United States judge.” 18 U.S.C. § 115(a)(1)(B). It is clear that this statute proscribes true threats, but I would hold, as discussed above, that Turner’s speech, as advocacy of the use of force, falls outside the true threats category of speech. Turner’s speech may still be proscribed under the statute if (1) the statute proscribes incitement and (2) Turner’s advocacy qualifies as incitement under Brandenburg.
*435 I start with the statute. It is possible that the word “threaten” under Section 115(a)(1)(B) includes “incitement.” Because “threaten” is not defined in the statute, we give the word its “ordinary, contemporary, common meaning.” See Davila, 461 F.3d at 302 (discussing 18 U.S.C. § 876(c)) (internal quotation marks omitted). In Davila we noted that
[according to the Oxford English Dictionary, a threat is a “denunciation to a person of ill to befall him; esp. a declaration of hostile determination or of loss, pain, punishment, or damage to be inflicted in retribution for or conditionally upon some course; a menace.” The American Heritage Dictionary, Fourth Edition, defines the word as “[a]n expression of an intention to inflict pain, injury, evil, or punishment,” or “[a]n indication of impending danger or harm.” The same dictionary defines the word “threaten,” in turn, as “[t]o express a threat against.”
Id. It is also significant that “[n]o ... circuit,” except for perhaps the Fourth Circuit, “has concluded that incitement can be punished under a threat statute.”[3] Bagdasarian, 652 F.3d at 1119 n. 18. In light of the ordinary meaning of the word “threaten,” the case law of other circuits, and the constitutional necessity to draw a line between true threats and incitement as two different categories of speech that use two distinct tests, I would hold that Section 115(a)(1)(B) does not proscribe incitement but does proscribe true threats. Turner’s speech was advocacy rather than a threat, and therefore could not be a true threat.
To be clear, I need not and do not say that Turner’s speech is constitutionally-protected. Turner’s speech may lose Constitutional protection under Brandenburg and, indeed, the district court felt that it did:
The First Amendment does not protect speech which “is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.” See Communist Party of Indiana v. Whitcomb, 414 U.S. 441, 448 [94 S.Ct. 656, 38 L.Ed.2d 635] (1975); Brandenburg, 395 U.S. at 447 [89 S.Ct. 1827]. The Supreme Court has clearly drawn a distinction between the mere teaching of a resort to violence from instances where an individual is “preparing a group for violent action and steeling it to such action.” Noto v. United States, 367 U.S. 290, 297-98 [81 S.Ct. 1517, 6 L.Ed.2d 836] (1961).
The Court finds that the Defendant’s actions are sufficient to incite or urge lawlessness. Moreover, posting the victim’s pictures, the exact location where they are employed with room numbers, and a map to the federal building complete with indications where the “Anti-truck bomb barriers” are located, provided exact information to facilitate the threat.”
Defendant argues that his statements were not meant to incite imminent lawlessness. As support, he notes that his comments were posted on his computer in New Jersey while the Judges were in Chicago, and that he did not actually stand outside of the Courthouse urging a group of supporters to rush the Courthouse to attack the Judges. The Court finds this argument unpersuasive. In the world in which we live, speech has no geographical boundaries. The fact *436 that Defendant issued his statements on his blog rather than in person only served to ensure that an indefinite audience had access to his remarks, and enlarged the group of individuals subject to incitement.
The district court may be right. It is certainly true the Internet has changed the “geographical boundaries” of speech. However, as Turner was not charged under an incitement statute, I need not reach the issue here.
Accordingly, I DISSENT from the majority’s opinion and would vacate Turner’s conviction and remand for further proceedings consistent with the above.

. We have held that "it is not necessary for the Government to prove that the defendant had a specific intent or a present ability to carry out his threat, but only that he intended to communicate a threat of injury through means reasonably adapted to that purpose.” United States v. Sovie, 122 F.3d 122, 125 (2d Cir.1997) (internal quotation marks and brackets omitted). It is necessary, however, that the object of the purported threat-the *432 person on whom the injury is to befall-is concerned with potential injury from the speaker. I take no position as to whether, after Black, 538 U.S. 343, 123 S.Ct. 1536, we must read a subjective intent requirement into our true threats analysis. See Majority Op. at 420 n. 4.

. It must be remembered, however, that we are evaluating speech or communication to distinguish between advocacy and purported threats. "The First Amendment [also] affords protection to symbolic or expressive conduct as well as to actual speech,” and such conduct may also be constitutionally proscribed. Black, 538 U.S. at 358, 123 S.Ct. 1536. For example, in Davila, we found that the defendant made a true threat when he sent a small amount of white powder in a letter labeled "ANTRAX." 461 F.3d at 300, 304-05. In Black, as the majority notes, the Supreme Court held that "given the surrounding context, cross burnings may constitute unprotected threats of violence, despite the wholly implicit nature of the serious threat they convey.” Majority Op. at 423 (citing Black, 538 U.S. at 345, 357, 363, 123 S.Ct. 1536) (internal citation omitted). In United States v. Hart, the Eighth Circuit found that the defendant’s parking of a Ryder truck at the entrance of an abortion clinic constituted a true threat, "in light of the surrounding circumstances.” 212 F.3d 1067, 1072 (8th Cir.2000). While similar expressions or conduct may amount to a true threat, they cannot be mistaken for advocacy, and thus ambiguity as to the nature of the communication does not raise the same concerns.

. In United States v. Patillo, the Fourth Circuit held that “an essential element of guilt” under 18 U.S.C. § 871, a threat statute, is "a present intention either to injure ... or incite others to injure,” but also added that "[mjuch of what we say here is dicta.” 438 F.2d 13, 16 (4th Cir.1971).